| **Summons** | CIVIL DOCKET NO.<br>**2184CV02683D** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| | | Michael Joseph Donovan | Clerk of Courts |
|---|---|---|---|

CASE NAME:

VS.

**Undini Sanz**

Plaintiff(s)

**City of Boston—**
**SOAR Boston,** *et al*

Defendant(s)

Suffolk                    County

COURT NAME & ADDRESS:

SUPERIOR CIVIL COURT

SUFFOLK COUNTY COURTHOUSE

THREE PEMBERTON SQ. 12th Floor

BOSTON, MASSACHUSETTS 02108

THIS SUMMONS IS DIRECTED TO _____

City of Boston—
SOAR Boston                    (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the            Suffolk Superior Court
3 Pemberton Sq, 12th Floor
Boston, MA 02108

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business,            Suffolk Superior Court
3 Pemberton Sq, 12th Floor
Boston, MA 02108

(address), by mail or in person **AND**

b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

Janet Ruggieri            Murphy & Rudolf LLP
1 Mercantile Street, Suite 740
Worcester, MA 01608

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A True Copy, Attest

Constable, Boston, MA            Date

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

4. **Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required Information on All Filings:**

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi E. Brieger _____ , Chief Justice on _____ , 20 _____ . (Seal)

Clerk-Magistrate *Michael Joseph Donovan*

Michael Joseph Donovan

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

### PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ , I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _____          Signature: _____

N.B.  **TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

Date: 12/10/21

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT DEPARTMENT

SUFFOLK, ss

SUPERIOR COURT
CIVIL ACTION NO.

UNDINI SANZ )
)
    Plaintiff )
)
v. )
)
CITY OF BOSTON – SOAR BOSTON )
LEEROY PEEPLES, )
TALIA WRIGHT-RIVERA, and )
WASCAR CASTILLO )
    Defendants )
)

11/22/2021

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Parties, Jurisdiction and Venue

1.  Plaintiff Undini Sanz ("Ms. Sanz" or "Plaintiff"), an individual residing at 131
    Homestead Street Apt. 8 Dorchester MA 02121, was an Outreach and Engagement
    Coordinator for the City of Boston- SOAR program.

2.  Defendant City of Boston - SOAR (Boston ("SOAR") is a gang intervention program
    located at 1483 Tremont Street, Dorchester, MA 02118.

3.  Defendant Leeroy Peeples ("Mr. Peeples") is an individual residing at 5 Linden Park
    Drive, Randolph, MA 02368, and upon information and belief at all relevant times was
    the Strategy and Operations Manager at SOAR with managerial authority over all of its
    employees.

4.  Defendant Talia Wright-Rivera ("Ms. Wright-Rivera") is an individual residing at 24
    Rosewood Street, Mattapan, MA, 02126 and upon information and belief at all relevant

times was the Director of SOAR. Both have managerial authority over all of its employees.

5. Defendant Wascar Castillo ("Mr. Castillo")(collectively "Defendants") is an individual with a place of business at 1483 Tremont Street, Dorchester, MA 02118. Upon information and belief at all relevant times Mr. Castillo was the Director of Human Resources of SOAR.

6. Above him in management is Marta Rivera, now the new Commissioner, but at the time was Managing Director of the SOAR Program, William Morales, Director of BCYF (Boston Community Youth Fund), and Marty Martinez, the Chief of Human Resources at the time. Many of these direct reports to Ms. Rivera were family members or friends.

7. The Court has jurisdiction over this case pursuant to M.G.L. c. 233A § 2 and M.G.L. c. 212 § 4, and venue is appropriate because most or all of the parties reside in or do business in Suffolk County.

8. Ms. Sanz has complied with all prerequisites for filing.

**Facts**

9. Plaintiff reasserts the facts set forth in paragraphs 1-8.

10. SOAR is a gang intervention program in the City of Boston, providing resources for gang prevention and intervention to at-risk teens and adults.

11. The SOAR program employs approximately 33 individuals, of whom approximately 31 are people of color.

12. Blacks are largely Streetworkers and Senior Supervising Streetworkers, while Hispanics are largely in Management roles.

2

13. SEIU Local 888 is the union to which most of the employees of the SOAR Program belong.

14. Ms. Sanz was hired in August of 2015 as a Street Worker/Outreach Coordinator by the City of Boston. The program later became the SOAR Boston program, but both roles were essentially the same.

15. Ms. Sanz's Supervisor was Robyn Christian, Senior Streetworker. Leeroy Peeples is the Assistant Manager of the Program, and his manager is Talia Wright-Rivera.

16. Prior to Wright-Rivera taking on the role of Director of SOAR, the atmosphere in the program had been collegial and like a family.

17. Defendant Wright-Rivera had been a Streetworker in 2006 for the City's gang intervention program at that time; she left at some point thereafter and was rehired as the Director of SOAR in July 2019.

18. Robyn Christian, a Black Senior Supervising Streetworker, was targeted by Leeroy, who said she was too old and had been there too long. She is approximately 53. She has been there since program started.

19. Wright-Rivera and Peeples harassed Robert Miller, who had a disability and stage four cancer. They refused to accommodate his disability. Miller had to wear Depends as a result of his disability, and Peeples and Wright-Rivera made fun of him, both in front of him and behind his back for it. They would refuse to allow him to take the van as an accommodation to his disability, so he had to walk everywhere.

20. In December 2019, Jackie Perry (in her 60s) was harassed for her age and her disability after she had back surgery.

3

21. Ms. Sanz objected to the discrimination and was then targeted with more work and harsher treatment.

22. In 2019 and 2020 at roll-call meetings with about 30 employees present, Ms. Wright-Rivera would single individuals out and ask, "Are you still here? Don't you want to move on? This is a job for young people." She said this to Jamaine Gaitor in front of the group.

23. In the roll-call open meetings, Wright-Rivera said that people who were over 40 were too old for the job, that this was a job for young people.

24. On or about November 2019 Ms. Sanz requested and was then approved to take leave under the Family and Medical Leave Act (FMLA) to care for her ill father who lived in the Dominican Republic and had been being abused by his caretaker. Ms. Sanz was out on leave for a total of approximately seven (7) days. At the time, Ms. Sanz explained to Wright-Rivera the reasons for her leave request.

25. Ms. Sanz was given little direction in the application process. Where she has been approved, she assumed she would be able to return to work without issue.

26. When Ms. Sanz returned to work in mid-November, 2019, Defendants opened an investigation into the use of her leave time, and had marked her out as "Away Without Leave" (AWOL) during the FMLA leave. Wright-Rivera asserted that Ms. Sanz did not follow protocols for applying for leave.

27. The leave protocols were unclear to Ms. Sanz. She had contacted Wascar Castillo regarding her request for leave and another Human Resource Representative for assistance in completing the application. Mr. Castillo provided little assistance with Ms. Sanz's application for leave, and failed to engage in an interactive dialog with her in doing so.

4

28. Defendants scheduled a hearing on November 15, 2019 on the question of whether Ms. Sanz had abused leave time. Defendants then postponed the hearing and never rescheduled it. As far as she knows, the allegation is still in her personnel file.

29. In or about December 2019, Talia Wright-Rivera, Director of SOAR, made it mandatory for all streetworkers in the SOAR Program to drive around the city together in crowded vans. Usually this meant in a van with between 14 to 16 people. In the many years that the program existed, this had never been a requirement. Workers had always been allowed to take their own car and meet the team at a given location.

30. In December 2019, when this new mandate was announced, Ms. Sanz and Stephen Powell, another streetworker, asked to use their own cars rather than get in the van. Ms. Sanz explained that she had health issues (anxiety, depression and PTSD) that would be exacerbated by driving in the van. Wright -Rivera said no, both Powell and Plaintiff had to use the crowded van. When they used their own cars, they were given warnings for doing so. These were written warnings, instead of the progressive discipline the union contract provided for, which required a verbal warning first.

31. Wright-Rivera required employees to get in crowded vans together even after mandated Covid-19 protocols were put in place by the Governor in March 2020.

32. After the first van incident in December 2019, Plaintiff experienced an increase in her workload. Before December 2019 Ms. Sanz has approximately 25 youths for which she provided assistance. That number began to increase thereafter, until eventually she had approximately 48 cases and youths to cover. This was significantly higher the most of the other streetworkers. Streetworkers that did not complain about the safety or other management issues did not have their caseloads increase.

5

33. On or about April 15, 2020, when Ms. Sanz objected to getting in the van again, she received a written warning again without progressive discipline. This is despite the fact that the employees all knew that one of their colleagues at the time, Dennis Avila, who was also required to get on the van, had recently been exposed to Covid-19 and had been ordered by Wright-Rivera to come to work during his quarantine period. Avila got sick with Covid-19 shortly after this, and caught it a second time as well. Defendants never told Ms. Sanz or anyone about the fact that Avila or anyone else caught Covid-19.

34. As a result, Ms. Sanz felt unsafe driving in vans with others during the first wave of the Covid-19 spike. The vans were dirty and often had used needles inside, as homeless people used them when they were parked, unlocked. Ms. Sanz was caring for her ill son and has her own health issues, including anxiety, depression and PTSD, which would be exacerbated if she were to catch Covid-19.

35. After being given the written warning in late April 2020, Ms. Sanz obtained a letter from her psychiatrist that she should be given an accommodation to these disabilities by being allowed to take her own car rather than the van. Notwithstanding receiving this letter from Ms. Sanz's psychiatrist, Wright-Rivera still required her to get in the crowded van.

36. In or about later January or early February 2020, due to the hostility of the work environment, a meeting was set up for staff by staff to express their feelings and concerns. Employees set up zoom meetings monthly from December 2020 through the coming months to discuss how management was mishandling the Covid-19 pandemic and what could be done.

37. The hostility and targeting of employees by Wright-Rivera and Peeples got more severe during the Covid-19 pandemic. Wright-Rivera believed that people were lying about having Covid-19 and she would open investigations into their illness and leave time.

38. This management style by Talia Wright-Rivera and Leroy Peeples has and continues to foster a hostile and intimidating work environment that is unbearable to work in.

39. Ms. Wright-Rivera, and Mr. Peeples have directly retaliated against other employees who speak out against their practices, such as Jamaine Gaitor, Tariq Jamison, Tim Buryne, Dana Burrus, Alexandra Carillo, Stephen Powell, as well as Ms. Sanz. The targeted person's caseload would increase after he or she spoke out.

40. Other Streetworkers who did not speak out, had regularly no more than 15 to 20 youths to assist. Maria, last name unknown, who was Hispanic, had approximately 15 youths. Alonzo, last name unknown, who had not spoken out, had approximately 20 youths. Dana Burrus did speak out against the management's practices and had 40 or 50 youths during this time. Mr. Powell had close to 70.

41. Ms. Sanz had 48 youths to assist during this time. She objected to this but the cases kept being assigned to her.

42. When Ms. Sanz couldn't keep up with the work, Peeples and Wright-Rivera would threaten to write her up. They told her she needed to leave if she could not handle the absurd caseload.

43. Wright-Rivera and Peeples acted purposely with the intent to intimidate and instill fear in their employees. Ms. Wright-Rivera, and Mr. Peeples on numerous occasions made threats that "the union can't save you", and "the union is for bad employees". Two of the union representatives have been severely disciplined (one, Tariq Jamison, was placed on

7

extended administrative leave, and the other, Jamaine Gaitor, a 14-year veteran, was

terminated) for nothing more than speaking up for workers' rights.

44. On or about October 8, 2020, in a regular daily roll call meeting of about 30 people, the

group raised a complaint with Wright-Rivera for not following Covid-19 protocols,

specifically that they had no Personal Protective Equipment (PPE), no plastic shields for

cubicles or desks, no one coming through every two hours to wipe down common areas,

no hot water in the building, and no one screening individuals for covid symptoms when

they came into the building.

45. The receptionist contracted Covid-19, and everyone had to walk past her central desk. In

Ms. Sanz's department, at least 10 people contracted Covid-19 out of 33.

46. Management refused to divulge who had contracted Covid-19 or been exposed, so one

would only hear by word of mouth, though a few employees came forward publicly. Upon

information, they were told or at least encouraged by Management not to divulge it.

47. Wright-Rivera gave all employees five throw-away masks and told them to keep

recycling them.

48. Ms. Wright-Rivera still required the employees to come in, and to get on the crowded

vans. Wright-Rivera told employees that if they had a problem then they should use sick

or vacation time, FMLA or to "do what you have to do."

49. In June of 2020 Ms. Sanz did take FMLA as a result the on-going safety issues and stress

that work was causing her.

50. In or about October 2020, a number of employees, including Ms. Sanz while on leave,

sent a letter to the Boston Public Health Commission, Mayor Marty Walsh, Marty

8

Martinez, the Chief of Human Services, Boston City Council members and others

complaining about the lack of Covid-19 protocols in place.

51. Defendants would have known who signed this letter, including Ms. Sanz.

52. There was no justification given for why the employees needed to travel in crowded vans

during the Covid-19 pandemic.

53. Wright-Rivera told them that they must come in because they were essential workers.

This was the first time the employees had ever been told that they were essential workers.

They had never been required to come to work in snowstorms or other emergencies.

54. In November 2020, Union Steward Jamaine Gaitor was terminated. Anyone who

supported Mr. Gaitor was targeted after his termination, including Stephen Powell, Tariq

Jamison (another union steward), Tim Buryne, and Ms. Sanz. These workers have either

left the program or been transferred to other City jobs. Numerous older workers have

given their notice or already left. These are people with more than 10 years of seniority,

who are over 40.

55. After Ms. Sanz returned to work in February 2021, Ms. Sanz learned in March 2021 that

Mr. Peeples, for no reason associated with SOAR's best interest, had told gang members

in Ms. Sanz's assigned area that she lived in a rival gang's territory. This caused the gang

members with whom she worked to suspect her of colluding with the rival gang to obtain

inside information about them. This was not the case but Ms. Sanz understood that not all

gang members were convinced.

56. As a result of this unprofessional, dangerous, and retaliatory revelation by Peeples, Ms.

Sanz no longer felt safe in her assigned area. Ms. Sanz became fearful to work in her

assigned area and had to take FMLA for safety reasons, which began July 2021.

57. During this time that she was on leave she applied for a position at the Boston Public Schools (BPS), as a Family Liaison, doing much of the same work she was doing for SOAR. As there was an overlap in the shifts of each job, Ms. Sanz requested an accommodation to change the hours in which she worked at SOAR to accommodate her work schedule at BPS. Other workers had been allowed to work remotely.

58. On or about August 28, 2021, Ms. Sanz put in a disclosure to the City that she was working both jobs and wished to continue to do so with the accommodation noted above. On September 7, 2021, BPS submitted one as well.

59. That same day Defendants terminated Ms. Sanz from her position with SOAR without ever contacting her to discuss the accommodation requested, or to discuss her transfer from SOAR to BPS, which was done without her consent or notice.

60. Ms. Sanz believes this was in retaliation for speaking out against management's hostile, discriminatory and unsafe practices, and because she had taken FMLA leave.

### COUNT I
### Retaliation in Violation of the Massachusetts Whistleblower Act,
### M.G.L. c.149, sec. 185 (b)(1)
*Defendant City of Boston*

61. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

62. Defendants' actions constitute retaliation for disclosing a violation of the Covid-19 mandate, which was a risk to public health and safety, in violation of M.G.L. c.149, sec. 185(b)(1).

63. As a result of Defendants' actions, Ms. Sanz has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

64. Defendants are liable for three times the amount of Ms. Sanz's lost wages, front and back pay, attorneys' fees and costs, multiple damages, compensatory damages, punitive and other damages so proven at trial.

## COUNT II
### Retaliation in Violation of the Massachusetts Whistleblower Act, M.G.L. c.149, sec. 185 (b) (3)
*Defendant City of Boston*

65. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

66. Defendants' actions constitute retaliation for Ms. Sanz's refusal to participate in actions which violate the law or which put public health or safety at risk, in violation of M.G.L. c.149, sec. 185(b)(3).

67. As a result of Defendants' actions, Ms. Sanz has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

68. Defendants are liable for three times the amount of Ms. Sanz's lost wages, front and back pay, attorneys' fees and costs, compensatory damages, punitive and other damages so proven at trial.

## COUNT III
### Intentional Infliction of Emotional Distress
*All Defendants*

69. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

70. Defendants' actions constitute intentional infliction of emotional distress.

71. Defendants are liable for Plaintiff's lost wages, front and back pay, compensatory damages, punitive and other damages so proven at trial.

## COUNT IV
### Breach of Implied Covenant of Good Faith and Fair Dealing
*All Defendants*

72. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

73. Defendants' actions constitute a breach of the Implied Covenant of Good Faith and Fair Dealing.

74. As a result of Defendants' actions, Ms. Sanz has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

75. Defendants are liable for Ms. Sanz's lost wages, front and back pay, compensatory damages, punitive and other damages so proven at trial.

WHEREFORE, the Plaintiff, Ms. Sanz, requests that the Court:

a.   Award full amount of her damages incurred as a result of Defendants' retaliatory actions, including without limit punitive damages, reasonable attorneys' fees and costs incurred;

b.   Award Ms. Sanz multiple damages for Defendants' violations of M.G.L. c.149 section 185; and

c.   Award the Ms. Sanz such other and further relief as the Court deems appropriate.

**PLAINTIFF CLAIMS A JURY TRIAL AS TO ALL ISSUES SO TRIABLE.**

Respectfully submitted,
Plaintiff,
UNDINI SANZ,

By Her Attorney,


*/s/ Janet Ruggieri*
Janet Ruggieri, BBO#634431
Murphy & Rudolf, LLP
Worcester, MA 01608
Telephone: (508) 425-6330
Fax: (508) 536-0834
ruggieri@murphyrudolf.com

Dated: November 18, 2021

## VERIFICATION OF COMPLAINT

I, Undini Sanz, do hereby swear and affirm under the pains and penalties of perjury that the above facts are true and accurate to the best of my recollection.


Dated: November 18, 2021                    */s/ Undini Sanz*
                                            Undini Sanz

13

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| | | COUNTY  Suffolk |

| Plaintiff: Undini Sanz | Defendant: City of Boston – Soar Boston |
|---|---|
| ADDRESS: 131 Homestead Street Apt. 8, Dorchester, MA 02121 | ADDRESS: 1483 Tremont Street, Dorchester, MA 02118 |
| | Defendant: Leeroy Peeples |
| | ADDRESS:  5 Linden Park Drive, Randolph MA 02368 |
| Plaintiff Attorney:  Janet R. Ruggieri | Defendant: Talia Wright-Rivera |
| ADDRESS: Murphy & Rudolf, LLP | ADDRESS: 24 Rosewood Street, Mattapan, MA 02126 |
| 1 Mercantile Street, Suite 740, Worcester MA 01608 | Defendant: Wascar Castillo |
| | ADDRESS: 1483 Tremont Street, Dorchester, MA 02118 |
| BBO: 634431 | |

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| AB1 | Tortious Action involving Municipality | A | ☑ YES   ☐ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?           Is there a class action under Mass. R. Civ. P. 23?
☐ YES   ☑ NO                          ☐ YES   ☑ NO

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS

A. Documented medical expenses to date

   1. Total hospital expenses           11/22/2021       _____

   2. Total doctor expenses                             _____

   3. Total chiropractic expenses                   _____

   4. Total physical therapy expenses            _____

   5. Total other expenses (describe below)     _____

   [                                                                    ]

                              Subtotal (1-5): _____

B. Documented lost wages and compensation to date       _____

C. Documented property damages to date             _____

D. Reasonably anticipated future medical and hospital expenses   _____

E. Reasonably anticipated lost wages               _____

F. Other documented items of damages (describe below)       $100,000.00+

   [ Violations of M.G.L. c. 149, § 185(b); M.G.L. c. 151B, sec 4; § 42 U.S.C. § 2003-2(a)(1) U.S.C. ]

                              TOTAL (A-F):  $100,000.00+

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

   [                                                                    ]

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Signature of Attorney/Unrepresented Plaintiff: X  /s/ Janet Ruggieri      Date: 11/22/2021

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney/Unrepresented Plaintiff: X  /s/ Janet Ruggieri      Date: 11/22/2021

| TRIAL COURT OF MASSACHUSETTS | NOTICE OF APPEARANCE | |
|---|---|---|

| COURT DEPARTMENT | DIVISION OR COUNTY | |
|---|---|---|
| SUPERIOR | SUFFOLK | COURT USE ONLY |

| CASE NAME | DOCKET NUMBER |
|---|---|
| *[In Matter of]* <br><br> Undini Sanz <br><br> *[v.]* <br><br> City of Boston – Soar Boston et al | |

## TO THE CLERK- MAGISTRATE / RECORDER / REGISTER:

Please enter my appearance in the above-named matter

☐ for myself.

◉ as attorney for  Undini Sanz

_____

(Name(s))


11/22/2021


| NAME (FIRST, MIDDLE, LAST) | B.B.O. NUMBER (IF APPLICABLE) |
|---|---|
| Janet Ruggieri | 634431 |

| FIRM OR AGENCY NAME (IF APPLICABLE) | OFFICE OR HOME PHONE NUMBER |
|---|---|
| Murphy & Rudolf, LLP | (508) 425-6330 |

| STREET ADDRESS | APT/UNIT # | MOBILE PHONE NUMBER |
|---|---|---|
| 1 Mercantile Street, Suite 740 | | FAX NUMBER |

| CITY/TOWN | STATE | ZIP CODE | E-MAIL ADDRESS |
|---|---|---|---|
| Worcester | MA | 01608 | ruggieri@murphyrudolf.com |

| DATED | SIGNATURE |
|---|---|
| 11/02/2021 | X /s/ Janet Ruggieri |

| TRIAL COURT OF MASSACHUSETTS | NOTICE OF APPEARANCE | |
|---|---|---|
| **COURT DEPARTMENT** SUPERIOR | **DIVISION OR COUNTY** SUFFOLK | **COURT USE ONLY** |

**CASE NAME**

*[In Matter of]*

Undini Sanz

*[v.]*

City of Boston – SOAR, et al

**DOCKET NUMBER**

---

## TO THE CLERK- MAGISTRATE / RECORDER / REGISTER:

Please enter my appearance in the above-named matter

☐ for myself.

◉ as attorney for  Undini Sanz

(Name(s))

11/22/2021

| NAME (FIRST, MIDDLE, LAST) Benjamin C. Rudolf | B.B.O. NUMBER (IF APPLICABLE) 667695 |
|---|---|
| FIRM OR AGENCY NAME (IF APPLICABLE) Murphy & Rudolf, LLP | OFFICE OR HOME PHONE NUMBER (508) 425-6330 |
| STREET ADDRESS 1 Mercantile Street, Suite 740 | APT/UNIT # |
| | MOBILE PHONE NUMBER |
| | FAX NUMBER |

| CITY/TOWN Worcester | STATE MA | ZIP CODE 01608 | E-MAIL ADDRESS brudolf@murphyrudolf.com |
|---|---|---|---|
| DATED 11/22/2021 | SIGNATURE **X** */s/ Benjamin C. Rudolf* | | |

11/29

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT DEPARTMENT

SUFFOLK, ss

SUPERIOR COURT
CIVIL ACTION NO.

21.2683

| | |
|---|---|
| UNDINI SANZ | ) |
| Plaintiff | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF BOSTON – SOAR BOSTON | ) |
| LEEROY PEEPLES, | ) |
| TALIA WRIGHT-RIVERA, and | ) |
| WASCAR CASTILLO | ) |
| Defendants | ) |

11/22/2021

## MOTION TO APPOINT SPECIAL PROCESS SERVER UNDER RULE 4C OF THE MASSACHUSETTS RULES OF CIVIL PROCEDURE

The Plaintiff moves this Honorable Court to appoint FRANCIS J. TRAPASSO

AND/OR HIS/HER AGENTS, a Constable/Process Server and a qualified and knowledgeable

person in the service of court process and not a party to the action, a disinterested person who is

over 18 to be specially appointed by the court to serve the process in this action under the

provision of Rule 4C of the Massachusetts Rules of the civil procedure in order to assure a

substantial savings in time.

Notice sent
12.01.21
JRR
MWRR1p
JWR
COBoo
LP
WC
mo

Respectfully Submitted,
Plaintiff Undini Sanz,
By her attorney,


/s/ Janet Ruggieri
Janet Ruggieri, Esq.
BBO# 634431
Murphy & Rudolf, LLP
1 Mercantile Street, Suite 740
Worcester, MA 01608
T: (508) 425 – 6330
F: (508) 536 – 0834
ruggieri@murphyrudolf.com

Dated: November 22, 2021

ORDER OF THE COURT APPOINTING A SPECIAL PROCESS·SERVER

PURSUANT TO RULE 4C, IT IS ORDERED THAT FRANCIS J. TRAPASSO AND/OR

HIS/HER AGENTS IS HEREBY APPOINTED A SPECIAL PROCESS SERVER FOR THE

ABOVE CAPTIONED CAUSE.


By: _____

Title: _____

Court: __Suffolk Superior Court_____

Date: _____

3

| **Summons** | CIVIL DOCKET NO.<br>**2184CV02505D** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

CASE NAME:

Stephen D. Powell

Plaintiff(s)

vs.

City of Boston—
SOAR Boston, *et al*

Defendant(s)

Michael Joseph Donovan     Clerk of Courts

Suffolk          County

COURT NAME & ADDRESS:

SUPERIOR CIVIL COURT

SUFFOLK COUNTY COURTHOUSE

THREE PEMBERTON SQ. 12th Floor

BOSTON, MASSACHUSETTS 02108

---

THIS SUMMONS IS DIRECTED TO _____ City of Boston— SOAR Boston _____ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the    Suffolk Superior Court<br>3 Pemberton Sq, 12th Floor<br>Boston, MA 02108
**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:     Suffolk Superior Court<br>3 Pemberton Sq, 12th Floor<br>Boston, MA 02108

     a) Filing your **signed original** response with the Clerk's Office for Civil Business,

            (address), by mail or in person **AND**

     b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

Janet Ruggieri       Murphy & Rudolf LLP<br>1 Mercantile Street, Suite 740<br>Worcester, MA 01608

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A True Copy, Attest

Constable, Boston, MA      Date

12/10/21

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required Information on All Filings:**

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi E. Brieger _____ , Chief Justice on _____ , 20 _____ . (Seal)

Clerk-Magistrate _Michael Joseph Donovan_
Michael Joseph Donovan

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ . I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _____          Signature: _____

**N.B.   TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

Date: 12/10/4

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT DEPARTMENT

SUFFOLK, ss

SUPERIOR COURT
CIVIL ACTION NO.

STEPHEN D. POWELL )
 )
   Plaintiff )
 )
v. )
 )
CITY OF BOSTON – SOAR BOSTON )   *11/2/2021*
LEEROY PEEPLES, )
TALIA WRIGHT-RIVERA,  and )
WASCAR CASTILLO )
   Defendants )
 )

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

### Parties, Jurisdiction and Venue

1.  Plaintiff Stephen D. Powell ("Mr. Powell" or "Plaintiff") is an individual residing at 117
    Bowdoin Street, Dorchester, Massachusetts, 02124. He is Black. His date of birth is
    7/11/68.

2.  Defendant City of Boston - SOAR Boston ("SOAR") is a gang intervention program
    located at 1483 Tremont Street, Dorchester, MA 02118.

3.  Defendant Leeroy Peeples ("Mr. Peeples") is an individual residing at 5 Linden Park
    Drive, Randolph, MA 02368, and upon information and belief at all relevant times was
    the Strategy and Operations Manager at SOAR with managerial authority over all of its
    employees.

4.  Defendant Talia Wright-Rivera ("Ms. Wright-Rivera") is an individual residing at 24
    Rosewood Street, Mattapan, MA, 02126 and upon information and belief at all relevant

times was the Manager/Director of SOAR. Both have managerial authority over all of its employees.

5. Defendant Wascar Castillo ("Mr. Castillo")(collectively "Defendants") is an individual with a place of business at 1483 Tremont Street, Dorchester, MA 02118. Upon information and belief at all relevant times Mr. Castillo was the Director of Human Resources of SOAR.

6. Above him in management is Marta Rivera, now the new Commissioner, but at the time was Managing Director of the SOAR Program, William Morales, Director of BCYF (Boston Community Youth Fund), and Marty Martinez, the Chief of Human Resources at the time. All are Hispanic, and many are friends or relatives of Marta Rivera.

7. The Court has jurisdiction over this case pursuant to M.G.L. c. 233A § 2 and M.G.L. c. 212 § 4, and venue is appropriate because most or all of the parties reside in or do business in Suffolk County.

8. Mr. Powell has complied with all prerequisites for filing.

**Facts**

9. Plaintiff reasserts the facts set forth in paragraphs 1-7.

10. SOAR is a gang intervention program in the City of Boston, providing resources for gang prevention and intervention to at-risk teens and adults.

11. The SOAR program employs approximately 33 individuals, of whom approximately 31 are people of color.

12. Blacks are largely Streetworkers and Senior Supervising Streetworker, while Hispanics are largely in Management roles.

2

13. SEIU Local 888 is the union to which most of the employees of the SOAR Program belong.

14. Mr. Powell was hired in November of 2007 as a Street Worker/Outreach Coordinator by the City of Boston. The program later became the SOAR Boston program, but both roles were essentially the same.

15. Mr. Powell is a qualified person with a disability. He has asthma, arthritis, anxiety and now covid related complications, including an exacerbation of all of his pre-existing conditions, and heart arrhythmia, continued swelling of joints from his arthritis flare after contracting Covid-19 at work.

16. Mr. Powell's Supervisor is Robyn Christian, Senior Streetworker. Leeroy Peeples is the Assistant Manager of the Program, and his Manager is Talia Wright-Rivera.

17. Prior to Wright-Rivera takin on the role of Manager/Director of SOAR, the atmosphere in the program had been collegial and like a family.

18. Defendant Wright-Rivera had been a Streetworker in 2006 for the City's gang intervention program at that time; she left at some point thereafter and was rehired as the Director of SOAR in July 2019.

19. In or about December 2019, Talia Wright-Rivera, Director of SOAR, made it mandatory for all streetworkers in the SOAR Program to drive around the city together in crowded vans. Usually this meant in a van with between 14 to 16 people. In the many years that the program existed, this had never been a requirement. Workers had always been allowed to take their own car and meet the team at a given location.

20. In December, 2019, when this new mandate was announced, Mr. Powell asked at roll call if he could use his car instead, as an accommodation to his disabilities. Wright-Rivera

3

didn't respond. When Mr. Powell took his car instead of using the van, she disciplined him for doing so. This was a written warning, instead of the progressive discipline the union contract provides for, which would include a verbal warning first. She told Mr. Powell she would discuss accommodating his disabilities, but then didn't accommodate them, stating that she did not believe that he had disability.

21. Despite Mr. Powell's request for accommodation, and knowing his disabilities, Wright-Rivera told him that he was required to use the van anyway. This was required even after mandated Covid-19 protocols were put in place by the Governor.

22. After the van incident in December 2019, Mr. Powell was called to meet with Talia Rivera and Wascar Castillo, of Human Resources. Mr. Powell asked his union steward, Jamaine Gaitor, to accompany him. Ms. Rivera and Mr. Castillo told the union steward, Jamaine Gaitor, to leave, stating that if he stayed, it would then turn into a disciplinary meeting for Mr. Powell. This was slated to be a meeting on Mr. Powell's request for accommodation.

23. After Mr. Gaitor left, Ms. Rivera and Mr. Castillo asked Mr. Powell how they could accommodate him. When he said by letting him drive his own car, they said no. They said that they didn't believe that he had anxiety and thus he would still have to get on the van.

24. On or about April 15, 2020, when Mr. Powell objected to getting in the van again, he was written up again, without progressive discipline, despite the fact that everyone knew that one of their colleagues at the time – Dennis Avila, who was also required to get on the van – *had been recently exposed to Covid-19 and had been ordered by Wright-Rivera to*

4

*come to work during his quarantine period.* He got sick with Covid-19 shortly after this, and caught it a second time as well.

25. As a result, Mr. Powell felt unsafe driving in vans with others during the first wave of covid spike. The vans were dirty, often were found with used needles inside as homeless people used them when they were parked, unlocked. Mr. Powell has asthma, arthritis and anxiety, and knew these would be exacerbated if he were to catch Covid-19.

26. In late January or early February 2020, due to the hostility of the work environment, a meeting was set up for staff by staff to express their feelings and concerns. Mr. Powell set up zoom meetings monthly from December 2020 through the coming months to discuss how management was mishandling the Covid-19 pandemic and what could be done.

27. The hostility and targeting of employees by Wright Rivera and Peeples got more severe during the Covid-19 pandemic. Wright-Rivera believed that people were lying about having Covid-19 and would open investigations into their illness and leave time.

28. This management style by Talia Wright-Rivera and Leroy Peeples has and continues to foster a hostile and intimidating work environment that is unbearable to work in.

29. Ms. Wright-Rivera, and Mr. Peeples have directly retaliated against other employees who speak out against their practices, such as Jamaine Gaitor, Tariq Jamison, Tim Buryne, Dana Burrus, Alexandra Carillo, as well as Mr. Powell. The targeted person's caseload would get bigger after he or she spoke out.

30. Other Streetworkers who did not speak out, had regularly no more than 15 to 20 youths to assist. Maria, last name unknown, who was Hispanic, had approximately 15 youths, which was the norm. Alonzo, last name unknown, who was Black and had not spoken

out, had approximately 20 youths. Dana Burrus, who is Black and did speak out against the management practices, had 40 or 50 youths during this time.

31. Mr. Powell had 70 youths to assist during this time. He objected but the cases kept getting assigned to him.

32. Mr. Powell was assigned areas with large gangs totaling as many as a couple hundred gang members for which he was asked to provide services. Unlike many other Streetworkers, he had to drive to many locations for this work, such as Randolph, Cambridge, Brockton. The travel time took away from his ability to be on the street helping these youths.

33. When Mr. Powell couldn't keep up with the work, Peeples and Wright-Rivera would threaten to write him up. They told him he needed to leave if he could not handle the absurd caseload.

34. Wright-Rivera and Peeples acted purposely with the intent to intimidate and instill fear in their employees. Ms. Wright-Rivera, and Mr. Peeples on numerous occasions made threats that "the union can't save you", and "the union is for bad employees". Two of the union representatives have been severely disciplined (one, Tariq Jamison, was placed on extended administrative leave, and the other, Jamaine Gaitor, a 14-year veteran, was terminated) for nothing more than speaking up for workers' rights.

35. Robyn Christian, a Black Senior Supervising Streetworker, was targeted by Leeroy, who said she was too old and had been there too long. She is approximately 53. She has been there since program started.

36. Wright-Rivera and Peeples harassed Robert Miller, who had a disability and stage four cancer. They refused to accommodate his disability. Miller had to wear Depends as a

6

result of his disability, and Peeples and Wright-Rivera made fun of him, both in front of him and behind his back for it. They would refuse to allow him to take the van as an accommodation to his disability, so he had to walk everywhere.

37. Mr. Powell heard Leroy Peeples, Strategy and Operations Manager, tell Jamaine Gaitor, a colleague, about that time that "we need to get Robert Miller out of here. That's a supervisory position that someone else could move into."

38. Ms. Wright-Rivera would single out people at roll call and say, "Are you still here? Don't you want to move on? This is a job for young people." She said this to Jamaine Gaitor.

39. In the roll call open meetings attended by about 30 people, Wright-Rivera said that people who were over 40 were too old for the job, that this was a job for young people.

40. In December 2019, Jackie Perry (in her 60s) was harassed for her age and her disability after she had back surgery.

41. Jackie Perry wrote a grievance, stating that she was being discriminated against because of her age and disability.

42. Mr. Powell lodged his objection to this treatment of older and disabled workers. When he did so, his caseload increased.

43. On or about October 8, 2020, in a regular daily roll call meeting of about 30 people, the group raised a complaint with Wright-Rivera for not following Covid-19 protocols, specifically that they had no Personal Protective equipment (PPE), no plastic shields for cubicles or desks, no one coming through every two hours to wipe down common areas, no hot water in the building, and no one screening individuals for covid symptoms when they came into the building.

7

44. The receptionist contracted Covid-19, and everyone had to walk past her central desk. In Mr. Powell's department, at least 10 people contracted Covid-19 out of 33.

45. Management refused to divulge who had contracted Covid-19 or been exposed, so one would only hear by word of mouth, though few employees came forward publicly. Upon information, they were told or at least encouraged by Management not to divulge it.

46. Wright-Rivera gave all employees five throw-away masks and told them to keep recycling them.

47. Ms. Wright-Rivera still required the employees to come in, and to get on the crowded vans. She told employees that if we had a problem then we should use sick or vacation time, FMLA or to "do what they have to do."

48. In or about October 2020, a number of employees, including Mr. Powell, sent a letter to the Boston Public Health Commission, Mayor Marty Walsh, Marty Martinez, the Chief of Human Services, Boston City Council members and others complaining about the lack of Covid-19 protocols in place.

49. Defendants would have known who signed this letter, including Mr. Powell.

50. Defendants continued to give Mr. Powell more work thereafter, notwithstanding the fact that they knew he was already overwhelmed.

51. In fact, Mr. Powell did catch Covid-19 in December of 2020, and he believes that this is the result of the negligence of the SOAR Program in not only failing to follow its own Covid-19 protocols, but also in blatantly placing its employees in harm's way.

52. Mr. Powell contracted Covid-19 at the same time as eight (8) other SOAR employees did.

53. At least two other employees that he was forced to be in close proximity with contracted Covid-19 prior to his contracting it.

8

54. There was no justification given for why the employees needed to travel in crowded vans during the Covid-19 pandemic.

55. Wright-Rivera told them that they must come in because they were essential workers. This was the first time the employees had ever been told that they were essential workers. They had never been required to come to work in snowstorms or other emergencies.

56. Mr. Powell has ongoing issues from contracting Covid-19 now, for which he is on unpaid medical leave. He has had to wear a heart monitor as a result of heart rhythm irregularities and his asthma made it very difficult to overcome the virus. His rheumatoid arthritis has flared and will not abate.

57. Prior to his medical leave in December 2020, it was clear that Mr. Powell was the target of retaliation because he became a union steward after Jamaine Gaitor got fired. Anyone who supported Mr. Gaitor was targeted after his termination, including Mr. Powell, Tariq Jamison (another union steward), Tim Buryne, and Undini Sanz. These workers have either left the program or been transferred - at least one was transferred without her consent - to other City jobs. Numerous older workers have given their notice or already left. These are people with more than 10 years of seniority, who are over 40.

58. It is clear that Blacks, particularly dark-skinned Blacks, are disciplined for infractions which Hispanics and white employees are not disciplined. This is in contravention of the Collective Bargaining agreement with the City and SEIU, Local 888.

59. Mr. Powell also applied for the position of Senior Supervisor of Street Workers in March 2020, but was never aware that any interview had been set up. Nor was he made aware of his rejection for the role.

60. He believes this was in retaliation for speaking out against management's hostile, discriminatory and unsafe practices. He never saw an email from Wright-Rivera on it, and she never followed up with him as to it, which she would regularly do with other employees being interviewed for promotions.

61. The hostile environment that Wright-Rivera and Peeples engendered caused Mr. Powell great emotional distress such that he knows returning would be detrimental to his health. He has effectively been constructively discharged.

## COUNT I
### Discrimination based on Plaintiff's race and color in violation of M.G.L. c.151B section 4(1)
*All Defendants*

62. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

63. Defendants' actions constitute discrimination based on Plaintiff, Stephen Powell's race and color, Black, in violation of M.G.L. c.151B sec.4(1).

64. As a result of Defendants' actions, Mr. Powell has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

65. Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT II

### Discrimination based on Plaintiff's race and color in violation of Title VII, 42 U.S.C. section 2000e-2(a)(1).
*All Defendants*

66. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

67. Defendants' actions constitute discrimination based on Mr. Powell's race and color, Black, in violation of 42 U.S.C. section 2000e-2(a)(1).

68. As a result of Defendants' actions, Mr. Powell has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

69. Defendants are liable for Mr. Powell's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT III

### Discrimination based on Plaintiff's age in violation of 29 U.S.C. section 621 et seq.
*All Defendants*

70. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

71. Defendants' actions constitute discrimination based on Mr. Powell's age, 53, in violation of 42 U.S.C. section 2000e-2(a)(1).

72. As a result of Defendants' actions, Mr. Powell has suffered lost wages, both front and back pay, attorneys' fees and costs, compensatory damages and emotional distress.

73. Defendants are liable for Mr. Powell's lost wages, front and back pay, compensatory damages and punitive damages so proven at trial.

## COUNT IV

### Discrimination based on Plaintiff's age,
### in violation of M.G.L. c.151B, section 4 (1B)
*All Defendants*

74. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

75. Defendants' actions constitute discrimination based on Mr. Powell's age, in violation of M.G.L. c.151B, sec.4 (1B).

76. As a result of Defendants' actions, Mr. Powell has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

77. Defendants are liable for Mr. Powell's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

11

## COUNT V

### Failure to Accommodate Plaintiff's Disability, in violation of M.G.L. c. 151B sec. 4 (16)
*All Defendants*

78. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

79. Defendants' actions constitute disability discrimination, in violation of M.G.L. c.151B, sec.4 (16).

80. As a result of Defendants' actions, Mr. Powell has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

81. Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT VI

### Failure to accommodate plaintiff's disability in violation of 42 U.S.C. sec. 12111
*All Defendants*

82. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

83. Defendants' actions constitute a failure to accommodate his disability, in violation of 42 U.S.C. sec. 12111.

84. As a result of Defendants' actions, Mr. Powell has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

85. Defendants are liable for Mr. Powell's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT VII

### Retaliation in violation of M.G.L. c.151B sec. 4(4)
*All Defendants*

86. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

87. Defendants' actions constitute retaliation, in violation of M.G.L. c.151B sec. 4(4).

88. As a result of Defendants' actions, Mr. Powell has suffered lost wages, both front and back pay, attorneys' fees and costs, compensatory damages and emotional distress.

89. Defendants are liable for Mr. Powell's lost wages, front and back pay, compensatory damages and punitive damages so proven at trial.

## COUNT VIII

### Retaliation in violation of 42 U.S.C. 2000e-3(a)
*All Defendants*

90. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

91. Defendants' actions constitute retaliation, in violation of 42 U.S.C. 2000-e3(a).

92. As a result of Defendants' actions, Mr. Powell has suffered lost wages, both front and back pay, attorneys' fees and costs, compensatory damages and emotional distress.

93. Defendants are liable for Mr. Powell's lost wages, front and back pay, compensatory damages and punitive damages so proven at trial.

## COUNT IX
### Unlawful aiding and abetting of discriminatory actions in violation of M.G.L. c.151B sec. 4(5)
*Defendants Castillo, Peeples and Wright-Rivera*

94. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

95. Defendants' actions constitute aiding and abetting in discriminatory acts, in violation of M.G.L.c.151B sec. 4(5).

96. As a result of Defendants' actions, Mr. Powell has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

97. Defendants are liable for Mr. Powell's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT X

**Unlawful interference with Plaintiff's rights under the anti-discrimination statute in violation of M.G.L. 151B. sec. 4(4A)**
*All Defendants*

98. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

99. Defendants' actions constitute unlawful interference with the Mr. Powell's enjoyment of his employment rights, in violation of M.G.L.c.151B sec. 4(4A).

100.　　As a result of Defendants' actions, Mr. Powell has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

**COUNT XI**
**Retaliation in Violation of the Massachusetts Whistleblower Act, M.G.L. c.149, sec. 185 (b)(1)**
*Defendant City of Boston*

101.　　The Plaintiff restates the foregoing paragraphs and incorporates them herein.

102.　　Defendants' actions constitute retaliation for disclosing a violation of the Covid-19 mandate, which was a risk to public health and safety, in violation of M.G.L. c.149, sec. 185(b)(1).

103.　　As a result of Defendants' actions, Mr. Powell has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

104.　　Defendants are liable for three times the amount of Mr. Powell's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

**COUNT XII**
**Retaliation in Violation of the Massachusetts Whistleblower Act, M.G.L. c.149, sec. 185 (b) (3)**
*Defendant City of Boston*

105.　　The Plaintiff restates the foregoing paragraphs and incorporates them herein.

14

106.     Defendants' actions constitute retaliation for Mr. Powell's refusal to participate in

actions which violate the law or which put public health or safety at risk, in violation of

M.G.L. c.149, sec. 185(b)(3).

107.     As a result of Defendants' actions, Mr. Powell has suffered lost wages, both front

and back pay, compensatory damages and emotional distress.

108.     Defendants are liable for three times the amount of Mr. Powell's lost wages, front

and back pay, attorneys' fees and costs, compensatory damages and punitive damages so

proven at trial.


## COUNT XIII
## Discrimination based on age and disability in violation of the Massachusetts Equal Right Act, M.G.L. c.93, sec. 103
*All Defendants*

109.     The Plaintiff restates the foregoing paragraphs and incorporates them herein.

110.     Defendants' actions constitute a violation of Plaintiff's Civil Rights and Equal

Protections, in violation of M.G.L. c.93, sec. 103.

111.     As a result of Defendants' actions, Plaintiff has suffered lost wages, both front

and back pay, compensatory damages and emotional distress.

112.     Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees

and costs, compensatory damages and punitive damages so proven at trial.


## COUNT XIV
## Violation of Massachusetts Civil Rights Act, c.12, sec 11I
*All Defendants*

113.     The Plaintiff restates the foregoing paragraphs and incorporates them herein.

114.     Defendants' actions constitute a violation of Plaintiff's Civil Rights and Equal

Protections, in violation of M.G.L. c.93, sec. 103.

115.     As a result of Defendants' actions, Plaintiff has suffered lost wages, both front
and back pay, compensatory damages and emotional distress.

116.     Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees
and costs, compensatory damages and punitive damages so proven at trial.

**COUNT XV**
**Infliction of Emotional Distress**
*All Defendants*

117.     The Plaintiff restates the foregoing paragraphs and incorporates them herein.

118.     Defendants' actions constitute intentional infliction of emotional distress.

119.     Defendants are liable for Plaintiff's lost wages, front and back pay, compensatory
damages and punitive damages so proven at trial.

**COUNT XVI**
**Breach of Implied Covenant of Good Faith and Fair Dealing**
*All Defendants*

120.     The Plaintiff restates the foregoing paragraphs and incorporates them herein.

121.     Defendants' actions constitute a breach of the Implied Covenant of Good Faith
and Fair Dealing.

122.     As a result of Defendants' actions, Mr. Powell has suffered lost wages, both front
and back pay, compensatory damages and emotional distress.

123.     Defendants are liable for Mr. Powell's lost wages, front and back pay,
compensatory damages and punitive damages so proven at trial.

WHEREFORE, the Plaintiff, Mr. Powell, requests that the Court:

a. Award full amount of his damages incurred as a result of Defendants' discriminatory actions, including without limit punitive damages, reasonable attorneys' fees and costs incurred;

b. Award full amount of his damages incurred as a result of Defendants' retaliatory actions, including without limit punitive damages, reasonable attorneys' fees and costs incurred;

c. Award Mr. Powell multiple damages for Defendants' violations of M.G.L. c.149 section 185; and

d. Award the Mr. Powell such other and further relief as the Court deems appropriate.

**PLAINTIFF CLAIMS A JURY TRIAL AS TO ALL ISSUES SO TRIABLE.**

Respectfully submitted,

Stephen Powell
By his attorney,

*/s/ Janet Ruggieri*
Janet Ruggieri, BBO#634431
Murphy & Rudolf, LLP
Worcester, MA 01608
Telephone: (508) 425-6330
Fax: (508) 536-0834
ruggieri@murphyrudolf.com

Dated: November 2, 2021

17

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| | | COUNTY  Suffolk |

| | |
|---|---|
| Plaintiff: Stephen D. Powell | Defendant: City of Boston – Soar Boston |
| ADDRESS: 117 Bowdoin Street, Dorchester, MA 02124 | ADDRESS: 1483 Tremont Street, Dorchester, MA 02118 |
| | Defendant: Leeroy Peeples |
| | ADDRESS:  5 Linden Park Drive, Randolph MA 02368 |
| Plaintiff Attorney: Janet R. Ruggieri | Defendant: Talia Wright-Rivera |
| ADDRESS: Murphy & Rudolf, LLP | ADDRESS: 24 Rosewood Street, Mattapan, MA 02126 |
| 1 Mercantile Street, Suite 740, Worcester MA 01608 | Defendant: Wascar Castillo |
| | ADDRESS: 1483 Tremont Street, Dorchester, MA 02118 |
| BBO: 634431 | |

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO.<br>AB1 | TYPE OF ACTION (specify)<br>Tortious Action involving Municipality | TRACK<br>A | HAS A JURY CLAIM BEEN MADE?<br>◉ YES  ☐ NO |
|---|---|---|---|

*If "Other" please describe:

Is there a claim under G.L. c. 93A?  ☐ YES  ◉ NO

Is there a class action under Mass. R. Civ. P. 23?  ☐ YES  ◉ NO

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS

A. Documented medical expenses to date

   1. Total hospital expenses

   2. Total doctor expenses     *11/2/2021*

   3. Total chiropractic expenses

   4. Total physical therapy expenses

   5. Total other expenses (describe below)

                                         Subtotal (1-5):

B. Documented lost wages and compensation to date

C. Documented property damages to date

D. Reasonably anticipated future medical and hospital expenses

E. Reasonably anticipated lost wages

F. Other documented items of damages (describe below)       $100,000.00+

   Violations of M.G.L. c. 151B § 4(1); 42 U.S.C. § 20003-2(a)(1); 29 U.S.C. § 621; *et seq.*

                                        TOTAL (A-F):    $100,000.00+

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

| Signature of Attorney/Unrepresented Plaintiff: X /s/ Janet Ruggieri | Date: 11/02/2021 |
|---|---|

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney/Unrepresented Plaintiff: X /s/ Janet Ruggieri | Date: 11/02/2021 |
|---|---|

| TRIAL COURT OF MASSACHUSETTS | NOTICE OF APPEARANCE | |
|---|---|---|
| **COURT DEPARTMENT**<br>SUPERIOR | **DIVISION OR COUNTY**<br>SUFFOLK | **COURT USE ONLY** |

**CASE NAME**

*[In Matter of]*

Stephen D. Powell

*[v.]*

City of Boston – Soar Boston et al

**DOCKET NUMBER**

---

## TO THE CLERK- MAGISTRATE / RECORDER / REGISTER:

Please enter my appearance in the above-named matter

☐ for myself.                                                                11/2/2021

☑ as attorney for  Stephen D. Powell

_____
(Name(s))

| **NAME (FIRST, MIDDLE, LAST)**<br><br>Janet Ruggieri | **B.B.O. NUMBER (IF APPLICABLE)**<br>634431 |
|---|---|
| **FIRM OR AGENCY NAME (IF APPLICABLE)**<br><br>Murphy & Rudolf, LLP | **OFFICE OR HOME PHONE NUMBER**<br>(508) 425-6330 |
| **STREET ADDRESS**<br><br>1 Mercantile Street, Suite 740 | **APT/UNIT #** | **MOBILE PHONE NUMBER**<br><br>**FAX NUMBER** |

| **CITY/TOWN**<br><br>Worcester | **STATE**<br>MA | **ZIP CODE**<br>01608 | **E-MAIL ADDRESS**<br>ruggieri@murphyrudolf.com |
|---|---|---|---|
| **DATED**<br><br>11/02/2021 | **SIGNATURE**<br><br>X */s/ Janet Ruggieri* | | |

| TRIAL COURT OF MASSACHUSETTS | NOTICE OF APPEARANCE | |
|---|---|---|

| COURT DEPARTMENT | DIVISION OR COUNTY | COURT USE ONLY |
|---|---|---|
| SUPERIOR | SUFFOLK | |

| CASE NAME | DOCKET NUMBER |
|---|---|
| *[In Matter of]* <br><br> Stephen D. Powell <br><br> *[v.]* <br><br> City of Boston – SOAR, et al | 2184CV02505 |

## TO THE CLERK- MAGISTRATE / RECORDER / REGISTER:

Please enter my appearance in the above-named matter

☐ for myself.

◉ as attorney for  Stephen D. Powell

_____
(Name(s))

| NAME (FIRST, MIDDLE, LAST) | B.B.O. NUMBER (IF APPLICABLE) |
|---|---|
| Benjamin C. Rudolf | 667695 |

| FIRM OR AGENCY NAME (IF APPLICABLE) | OFFICE OR HOME PHONE NUMBER |
|---|---|
| Murphy & Rudolf, LLP | (508) 425-6330 |

| STREET ADDRESS | APT/UNIT # | MOBILE PHONE NUMBER |
|---|---|---|
| 1 Mercantile Street, Suite 740 | | FAX NUMBER |

| CITY/TOWN | STATE | ZIP CODE | E-MAIL ADDRESS |
|---|---|---|---|
| Worcester | MA | 01608 | brudolf@murphyrudolf.com |

| DATED | SIGNATURE |
|---|---|
| 11/18/2021 | X /s/ Benjamin C. Rudolf |

Notify ✓ 11/5

11/05

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

STEVEN D. POWELL

    Plaintiff

v.

CITY OF BOSTON – SOAR BOSTON
LEEROY PEEPLES,
TALIA WRIGHT-RIVERA, and
WASCAR CASTILLO
    Defendants

SUFFOLK COUNTY SUPERIOR COURT
CIVIL ACTION NO.

21- 25051

Notice Sent
11.12.21 (NS)
- MBR/JRR.

11/2/2021

11/4/21 Allowed. (Connolly J.)
After Asst. Red.

## MOTION TO APPOINT SPECIAL PROCESS SERVER UNDER RULE 4C OF THE MASSACHUSETTS RULES OF CIVIL PROCEDURE

The Plaintiff moves this Honorable Court to appoint FRANCIS J. TRAPASSO

AND/OR HIS/HER AGENTS, a Constable/Process Server and a qualified and knowledgeable

person in the service of court process and not a party to the action, a disinterested person who is

over 18 to be specially appointed by the court to serve the process in this action under the

provision of Rule 4C of the Massachusetts Rules of the civil procedure in order to assure a

substantial savings in time.

| **Summons** | CIVIL DOCKET NO.<br>**2184CV02502E** | **Trial Court of Massachusetts**<br>**The Superior Court** | |
|---|---|---|---|
| CASE NAME: | | Michael Joseph Donovan | Clerk of Courts |
| | **Sean D. Pitts** | Suffolk | County |
| | Plaintiff(s) | COURT NAME & ADDRESS: | |
| VS. | **City of Boston—**<br>**SOAR Boston,** *et al* | SUPERIOR CIVIL COURT<br>SUFFOLK COUNTY COURTHOUSE<br>THREE PEMBERTON SQ. 12th Floor | |
| | Defendant(s) | BOSTON, MASSACHUSETTS 02108 | |

THIS SUMMONS IS DIRECTED TO _____ City of Boston—SOAR Boston _____ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed

against you is attached to this summons and the original complaint has been filed in the       Suffolk Superior Court
3 Pemberton Sq, 12th Floor
**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**       Boston, MA 02108

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint.

You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to

resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing**

**from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the

Plaintiff, if unrepresented). You can do this by:       Suffolk Superior Court
3 Pemberton Sq, 12th Floor
    a) Filing your **signed original** response with the Clerk's Office for Civil Business,       Boston, MA 02108

                              (address), by mail or in person **AND**

    b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

                    **Janet Ruggieri**      Murphy & Rudolf LLP
                                           1 Mercantile Street, Suite 740
3. **What to Include in Your Response.**         Worcester, MA 01608

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s)

alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or

you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that

are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer.

Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case

    heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A True Copy, Attest

Constable, Boston, MA     Date

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required Information on All Filings:**

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi E. Brieger _____ , Chief Justice on _____ , 20 _____ . (Seal)

Clerk-Magistrate *Michael Joseph Donovan*

Michael Joseph Donovan

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ . I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _____          Signature: _____

**N.B.   TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date: 12/10/21

rev. 1/2019

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

SUFFOLK COUNTY SUPERIOR COURT
CIVIL ACTION NO.

| | |
|---|---|
| SEAN D. PITTS             ) | |
|                     ) | |
|        Plaintiff       ) | |
|                     ) | |
| v.                   ) | |
|                     ) | |
| CITY OF BOSTON – SOAR BOSTON   ) | |
| LEEROY PEEPLES,        ) | ***11/2/2021*** |
| TALIA WRIGHT-RIVERA, and    ) | |
| WASCAR CASTILLO         ) | |
|        Defendants      ) | |

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

### Parties, Jurisdiction and Venue

1. Plaintiff Sean D. Pitts ("Mr. Pitts" or "Plaintiff") is an individual residing at 117 Bowdoin Street, Dorchester, Massachusetts, 02124. He is Black, and age 49 (date of birth: 6/10/71).

2. Defendant City of Boston - SOAR Boston ("SOAR"), which stands for Street Outreach Advocacy and Response, is a gang intervention program located at 1483 Tremont Street, Dorchester, MA 02118.

3. Defendant Leeroy Peeples ("Mr. Peeples") is an individual residing at 5 Linden Park Drive, Randolph, MA 02368, and upon information and belief at all relevant times was the Strategy and Operations Manager at SOAR with managerial authority over all of its employees.

4. Defendant Talia Wright-Rivera ("Ms. Wright-Rivera") is an individual residing at 24 Rosewood Street, Mattapan, MA, 02126 and upon information and belief at all relevant

times was the Director of SOAR. Both have managerial authority over all of its employees.

5. Defendant Wascar Castillo ("Mr. Castillo")(collectively "Defendants") is an individual with a place of business at 1483 Tremont Street, Dorchester, MA 02118. Upon information and belief at all relevant times Mr. Castillo was the Director of Human Resources for SOAR.

6. Mr. Pitts was supervised by Senior Streetworker, Robert Miller, until Mr. Miller passed away from Cancer. After that he was directly supervised by Robyn Christian. Above them was Leeroy Peeples, then Ms. Wright-Rivera, Marta Rivera, now the new Commissioner, but at the time was Managing Director of the SOAR Program, William Morales, Director of BCYF (Boston Community Youth Fund), and Marty Martinez, the Chief of Human Resources at the time. All are Hispanic, and many are friends or relatives of Marta Rivera.

7. The Court has jurisdiction over this case pursuant to M.G.L. c. 233A § 2 and M.G.L. c. 212 § 4, and venue is appropriate because most or all of the parties reside in or do business in Suffolk County.

8. Mr. Pitts has complied with all prerequisites for filing.

Facts

9. Mr. Pitts reasserts the facts set forth in paragraphs 1-7.

10. SOAR is a gang intervention program in the City of Boston, providing resources for gang prevention and intervention to at-risk teens and adults.

11. The SOAR program employs approximately 33 individuals, of whom approximately 31 are people of color.

2

12. Blacks are largely Streetworkers and Senior Supervising Streetworkers, while Hispanics are largely in Management roles.

13. SEIU Local 888 is the union to which most of the employees of the SOAR Program belong.

14. Mr. Pitts was hired by the City of Boston in August of 1999 as a Streetworker for the gang intervention and prevention program. Subsequently, his office became the SOAR Program of Boston, where he worked as a Streetworker involved in gang prevention and intervention.

15. In his 21 years of work with the program, Mr. Pitts was never promoted. He was passed up at least three times for promotions for which he applied, namely 1). one in 2010, 2). Another in 2016 and 3). in August 2020, when there were five (5) positions posted for Resource Coordinator.

16. Mr. Pitts applied for each of these roles, including the last as Resource Coordinator. He interviewed for each but did not receive any of these positions. They were given mostly to individuals younger than he was, despite his seniority and experience on the job.

17. From about July 2019 to March 2020, Ms. Wright-Rivera, Director of the SOAR Program, and Leeroy Peeples, Manager of Strategic Operations, regularly harassed older workers by telling them that they were too old for the job and should find other positions.

18. In the roll-call meetings, which were open meetings attended by about 30 people, Wright-Rivera would say that people who were over 40 were too old for the job, and that this was a job for young people.

3

19. In December 2019, Jackie Perry (who is in her 60s) was harassed for her age and her disability after she had back surgery, which caused her to move more slowly. Peeples said Jackie Perry was dead weight.

20. Peeples also treated older streetworker Robert Miller poorly, and tried to force him out of his position.

21. Although Mr. Miller had Stage 4 Cancer, he was not allowed to use the van to get around and do his job. He had to walk.

22. Peeples and Rivera said older workers such as Robert and Robyn Christian couldn't do their jobs anymore because of their age. Both had been direct supervisors while Mr. Pitts was there and he believed that they were great at their jobs, and very knowledgeable.

23. Eventually Miller left, after dealing with the harassment while going through cancer treatment. He died shortly thereafter.

24. Mr. Pitts heard Peeples state that he would be getting rid of Robyn Christian, saying she had been there too long.

25. In or about December 2019, Talia Wright-Rivera, Director of SOAR, made it mandatory for all Streetworkers in the SOAR Program to drive around the city together in crowded vans. Usually this meant in a van with between 14 to 16 people. In the many years that the program existed, this had never been a requirement. Workers had always been allowed to take their own car and meet the team at a given location.

26. During the Covid-19 Pandemic (Pandemic), Ms. Wright-Rivera told the employees for the first time that they were essential employees and required to come to work. This was despite the fact that SOAR had never been deemed essential, or asked to come in during other natural disasters or storms.

4

27. Also during the Pandemic, management would not disclose when an individual contracted Covid-19, or alert those employees who had been in close contact with that individual. Employees only found out through word of mouth.

28. On or about April 15, 2020, during the height of the Pandemic, Talia-Wright Rivera was still mandating that we all get in to the crowded van together.

29. Dennis Avila, who was also required to get on the van – *had been recently exposed to Covid-19 and had been ordered by Wright-Rivera to come to work during his quarantine period.* He got sick with Covid-19 shortly after this, and caught it a second time as well.

30. Mr. Pitts objected, knowing that Dennis Avila had been in the van after being exposed to Covid-19 and then not being allowed by management to quarantine.

31. Rivera still required everyone to get into the vans. This created a very hazardous condition for older employees or anyone with a pre-existing condition, of which there were many.

32. In April 2020, Mr. Pitts's mother did in fact contract covid. As a result, he had to request leave to care for her from April to October 13, 2020.

33. After Mr. Pitts had used all of his accrued time, Wascar Castillo, HR director for SOAR, told him to return to work or be fired.

34. Mr. Pitts was never told by Mr. Castillo about his other options, such as requesting leave from the Employee Extended Illness Leave Bank or even a bill that the legislature could pass on his behalf that others could donate sick time to him to allow him to get paid and continue his leave.

35. When his FMLA ran out, SOAR would not grant Mr. Pitts an extension.

5

36. Mr. Pitts was still unable to return to work and believing there were no set of circumstances that would allow him to continue leave and be paid, and also knowing that he would be fired if he did not return. Instead he resigned October 13, 2020.

37. It is clear that Blacks, particularly dark-skinned Blacks, experienced adverse employment actions that Hispanics and white employees did not experience. This is in contravention of the Collective Bargaining agreement with the City and SEIU, Local 888.

## COUNT I
### Discrimination based on Plaintiff's race and color in violation of M.G.L. c.151B section 4(1)
*All Defendants*

38. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

39. Defendants' actions constitute discrimination based on Plaintiff, Sean Pitts' race and color, Black, in violation of M.G.L. c.151B sec.4(1).

40. As a result of Defendants' actions, Mr. Pitts has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

41. Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT II
### Discrimination based on Plaintiff's race and color in violation of Title VII, 42 U.S.C. section 2000e-2(a)(1).
*All Defendants*

42. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

43. Defendants' actions constitute discrimination based on Mr. Pitts' race and color, Black, in violation of 42 U.S.C. section 2000e-2(a)(1).

44. As a result of Defendants' actions, Mr. Pitts has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

45. Defendants are liable for Mr. Pitts' lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT III

### Discrimination based on Plaintiff's age in violation of 29 U.S.C. section 621 et seq.
*All Defendants*

46. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

47. Defendants' actions constitute discrimination based on Mr. Pitts' age, 49, in violation of 42 U.S.C. section 2000e-2(a)(1).

48. As a result of Defendants' actions, Mr. Pitts has suffered lost wages, both front and back pay, attorneys' fees and costs, compensatory damages and emotional distress.

49. Defendants are liable for Mr. Pitts' lost wages, front and back pay, compensatory damages and punitive damages so proven at trial.

## COUNT IV

### Discrimination based on Plaintiff's age, in violation of M.G.L. c.151B, section 4 (1B)
*All Defendants*

50. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

51. Defendants' actions constitute discrimination based on Mr. Pitts' age, 49, in violation of M.G.L. c.151B, sec.4 (1B).

52. As a result of Defendants' actions, Mr. Pitts has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

53. Defendants are liable for Mr. Pitts' lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT V

### Retaliation in violation of M.G.L. c.151B sec. 4(4)

7

*All Defendants*

54. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

55. Defendants' actions constitute retaliation, in violation of M.G.L. c.151B sec. 4(4).

56. As a result of Defendants' actions, Mr. Pitts has suffered lost wages, both front and back pay, attorneys' fees and costs, compensatory damages and emotional distress.

57. Defendants are liable for Mr. Pitts' lost wages, front and back pay, compensatory damages and punitive damages so proven at trial.

## COUNT VI

### Retaliation in violation of 42 U.S.C. 2000e-3(a)
*All Defendants*

58. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

59. Defendants' actions constitute retaliation, in violation of 42 U.S.C. 2000-e3(a).

60. As a result of Defendants' actions, Mr. Powell has suffered lost wages, both front and back pay, attorneys' fees and costs, compensatory damages and emotional distress.

61. Defendants are liable for Mr. Powell's lost wages, front and back pay, compensatory damages and punitive damages so proven at trial.

## COUNT IX
### Unlawful aiding and abetting of discriminatory actions
### in violation of M.G.L. c.151B sec. 4(5)
*Defendants Castillo, Peeples and Wright-Rivera*

62. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

63. Defendants' actions constitute aiding and abetting in discriminatory acts, in violation of M.G.L.c.151B sec. 4(5).

64. As a result of Defendants' actions, Mr. Pitts has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

8

65. Defendants are liable for Mr. Pitts' lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT X
## Unlawful interference with Plaintiff's rights under the anti-discrimination statute in violation of M.G.L. sec. 4(4A)
### *All Defendants*

66. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

67. Defendants' actions constitute unlawful interference with the Mr. Pitts' enjoyment of his employment rights, in violation of M.G.L.c.151B sec. 4(4A).

68. As a result of Defendants' actions, Mr. Powell has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

## COUNT XI
## Retaliation in Violation of the Massachusetts Whistleblower Act, M.G.L. c.149, sec. 185 (b) (3)
### *Defendant City of Boston*

69. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

70. Defendants' actions constitute retaliation for Mr. Pitts' objection to participating in actions which violate the law or which put public health or safety at risk, in violation of M.G.L. c.149, sec. 185(b)(3).

71. As a result of Defendants' actions, Mr. Pitts has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

72. Defendants are liable for three times the amount of Mr. Pitts' lost wages, front and back pay, attorneys' fees and costs, multiple damages, compensatory damages and punitive damages so proven at trial.

## COUNT XII
## Discrimination based on age in violation of the Massachusetts Equal Right Act, M.G.L. c.93, sec. 103
### *All Defendants*

9

73. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

74. Defendants' actions constitute a violation of Mr. Pitts' Civil Rights and Equal Protection, in violation of M.G.L. c.93, sec. 103.

75. As a result of Defendants' actions, Mr. Pitts' has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

76. Defendants are liable for Mr. Pitts' lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT XIII
### Violation of Massachusetts Civil Rights Act, c.12, sec 11I
*All Defendants*

77. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

78. Defendants' actions constitute a violation of Plaintiff's Civil Rights in violation of the Massachusetts Civil Rights Act, M.G.L. c.12, section 11I.

79. As a result of Defendants' actions, Mr. Pitts has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

80. Defendants are liable for Mr. Pitts' lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT XIV
### Intentional Infliction of Emotional Distress
*All Defendants*

81. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

82. Defendants' actions constitute intentional infliction of emotional distress.

83. Defendants are liable to Mr. Pitts' for compensatory damages and punitive damages so proven at trial.

## COUNT XV

## Breach of Implied Covenant of Good Faith and Fair Dealing
### *All Defendants*

84. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

85. Defendants' actions constitute a breach of the Implied Covenant of Good Faith and Fair Dealing.

86. As a result of Defendants' actions, Mr. Pitts has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

87. Defendants are liable for Mr. Pitts' lost wages, front and back pay, compensatory damages and punitive damages so proven at trial.


WHEREFORE, the Plaintiff requests that the Court:

a.  Award full amount of his damages incurred as a result of Defendants' discriminatory and retaliatory actions, including without limit punitive damages, reasonable attorneys' fees and costs incurred;

b.  Award the Plaintiff such other and further relief as the Court deems appropriate.


**PLAINTIFF CLAIMS A JURY TRIAL AS TO ALL ISSUES SO TRIABLE.**


Respectfully submitted,

Sean Pitts
By his attorney,


Dated: 11/1/21

*/s/ Janet Ruggieri*
Janet Ruggieri, BBO#634431
Murphy & Rudolf, LLP
Worcester, MA 01608
Telephone: (508) 425-6330
Fax: (508) 536-0834
ruggieri@murphyrudolf.com

11

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| | | COUNTY Suffolk |

| | |
|---|---|
| Plaintiff: Sean D. Pitts | Defendant: City of Boston – Soar Boston |
| ADDRESS: 117 Bowdoin Street, Dorchester, MA 02104 | ADDRESS: 1483 Tremont Street, Dorchester, MA 02118 |
| | Defendant: Lecroy Peeples |
| | ADDRESS: 5 Linden Park Drive, Randolph MA 02368 |
| Plaintiff Attorney: Janet R. Ruggieri | Defendant: Talia Wright-Rivera |
| ADDRESS: Murphy & Rudolf, LLP | ADDRESS: 24 Rosewood Street, Mattapan, MA 02126 |
| 1 Mercantile Street, Suite 740, Worcester MA 01608 | Defendant: Wascar Castillo |
| | ADDRESS: 1483 Tremont Street, Dorchester, MA 02118 |
| BBO: 634431 | |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| AB1 | Tortious Action involving Municipality | A | ◉ YES   ☐ NO |

*If "Other" please describe: _____

Is there a claim under G.L. c. 93A?    ☐ YES   ◉ NO        Is there a class action under Mass. R. Civ. P. 23?   ☐ YES   ◉ NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS

A. Documented medical expenses to date

    1. Total hospital expenses         *11/2/2021*       _____

    2. Total doctor expenses      _____

    3. Total chiropractic expenses      _____

    4. Total physical therapy expenses      _____

    5. Total other expenses (describe below)      _____

           Subtotal (1-5): _____

B. Documented lost wages and compensation to date      _____

C. Documented property damages to date      _____

D. Reasonably anticipated future medical and hospital expenses      _____

E. Reasonably anticipated lost wages      _____

F. *Other documented items of damages (describe below)*      $100,000.00+

     Violations of M.G.L. c. 151B § 4(1); 42 U.S.C. § 20003-2(a)(1); 29 U.S.C. § 621; *et seq.*

           TOTAL (A-F):    $100,000.00+

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

_____

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Signature of Attorney/Unrepresented Plaintiff: X /s/ Janet Ruggieri      Date: 11/02/2021

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney/Unrepresented Plaintiff: X /s/ Janet Ruggieri      Date: 11/02/2021

| TRIAL COURT OF MASSACHUSETTS | NOTICE OF APPEARANCE | |
|---|---|---|
| **COURT DEPARTMENT**<br><br>SUPERIOR | **DIVISION OR COUNTY**<br><br>SUFFOLK | **COURT USE ONLY** |

| CASE NAME | DOCKET NUMBER |
|---|---|
| *[In Matter of]*<br><br>Sean D. Pitts<br>     *[v.]*<br><br><u>City of Boston – Soar Boston et al</u> | |

## TO THE CLERK- MAGISTRATE / RECORDER / REGISTER:

Please enter my appearance in the above-named matter

☐ for myself.                                                               11/2/2021

◉ as attorney for  <u>Sean D. Pitts</u>

(Name(s))

| NAME (FIRST, MIDDLE, LAST)<br><br>Janet Ruggieri | B.B.O. NUMBER (IF APPLICABLE)<br><br>**634431** |
|---|---|
| FIRM OR AGENCY NAME (IF APPLICABLE)<br><br>Murphy & Rudolf, LLP | OFFICE OR HOME PHONE NUMBER<br>**(508) 425-6330** |
| STREET ADDRESS<br><br>1 Mercantile Street, Suite 740 | APT/UNIT # | MOBILE PHONE NUMBER<br><br>FAX NUMBER |
| CITY/TOWN<br><br>Worcester | STATE<br><br>MA | ZIP CODE<br><br>01608 | E-MAIL ADDRESS<br><br>ruggieri@murphyrudolf.com |
| DATED<br><br>11/02/2021 | SIGNATURE<br><br>**X** */s/ Janet Ruggieri* |

| [Notice of Appearance (TC001: 09/2017)] | www.mass.gov/courts/forms | Page 1 of 1 |
|---|---|---|

| TRIAL COURT OF MASSACHUSETTS | NOTICE OF APPEARANCE | |
|---|---|---|
| **COURT DEPARTMENT**<br>SUPERIOR | **DIVISION OR COUNTY**<br>SUFFOLK | **COURT USE ONLY** |
| **CASE NAME**<br>*[In Matter of]*<br><br>Sean D. Pitts<br><br>*[v.]*<br><br>City of Boston – SOAR, et al | | **DOCKET NUMBER**<br><br>2184CV02502 |

## TO THE CLERK- MAGISTRATE / RECORDER / REGISTER:

Please enter my appearance in the above-named matter

☐ for myself.

◉ as attorney for  Sean D. Pitts

(Name(s))

| NAME (FIRST, MIDDLE, LAST)<br><br>Benjamin C. Rudolf | B.B.O. NUMBER (IF APPLICABLE)<br><br>667695 | |
|---|---|---|
| FIRM OR AGENCY NAME (IF APPLICABLE)<br><br>Murphy & Rudolf, LLP | OFFICE OR HOME PHONE NUMBER<br>(508) 425-6330 | |
| STREET ADDRESS<br><br>1 Mercantile Street, Suite 740 | APT/UNIT # | MOBILE PHONE NUMBER<br><br>FAX NUMBER |
| CITY/TOWN<br><br>Worcester | STATE<br>MA | ZIP CODE<br>01608 | E-MAIL ADDRESS<br><br>brudolf@murphyrudolf.com |
| DATED<br><br>11/18/2021 | SIGNATURE<br><br>X */s/ Benjamin C. Rudolf* | |

11/05

**COMMONWEALTH OF MASSACHUSETTS**

NOTIFY

SUFFOLK, ss

SUFFOLK COUNTY SUPERIOR COURT
CIVIL ACTION NO. 21·2502 /R

SEAN D. PITTS                    )
                                 )
         Plaintiff               )
                                 )
v.                               )
                                 )
CITY OF BOSTON – SOAR BOSTON     )       **11/2/2021**
LEEROY PEEPLES,                  )
TALIA WRIGHT-RIVERA,  and        )
WASCAR CASTILLO                  )
         Defendants              )
                                 )

Notice sent
11/09/2021
J. R. R.
M. & R.,LLP.
L. P.
T. W.R..
W. C.
S. B.

(sc)

## MOTION TO APPOINT SPECIAL PROCESS SERVER UNDER RULE 4C OF THE MASSACHUSETTS RULES OF CIVIL PROCEDURE

The Plaintiff moves this Honorable Court to appoint FRANCIS J. TRAPASSO

AND/OR HIS/HER AGENTS, a Constable/Process Server and a qualified and knowledgeable

person in the service of court process and not a party to the action, a disinterested person who is

over 18 to be specially appointed by the court to serve the process in this action under the

provision of Rule 4C of the Massachusetts Rules of the civil procedure in order to assure a

substantial savings in time.

| **Summons** | CIVIL DOCKET NO.<br>**2184CV02362B** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|
| CASE NAME:<br><br>**Jamaine Gaitor**<br><br>Plaintiff(s)<br><br>VS.<br><br>**City of Boston—**<br>**SOAR Boston, _et al_**<br><br>Defendant(s) | | Michael Joseph Donovan          Clerk of Courts<br>Suffolk                                    County<br>COURT NAME & ADDRESS:<br><br>SUPERIOR CIVIL COURT<br>SUFFOLK COUNTY COURTHOUSE<br>THREE PEMBERTON SQ. 12th Floor<br>BOSTON, MASSACHUSETTS  02108 |

THIS SUMMONS IS DIRECTED TO _____ City of Boston— SOAR Boston _____ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the      Suffolk Superior Court
3 Pemberton Sq, 12th Floor
Boston. MA 02109

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:                                                            Suffolk Superior Court
3 Pemberton Sq, 12th Floor
Boston. MA 02108

     a) Filing your **signed original** response with the Clerk's Office for Civil Business,

          (address), by mail or in person **AND**

     b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

          Janet Ruggieri                    Murphy & Rudolf LLP
1 Mercantile Street, Suite 740
Worcester, MA 01608

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A True Copy, Attest

Constable, Boston, MA          Date

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required Information on All Filings:**

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi E. Brieger _____ , Chief Justice on _____ , 20____ . (Seal)

Clerk-Magistrate *Michael Joseph Donovan*

Michael Joseph Donovan

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ . I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _____          Signature: _____

**N.B.   TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date: 12/10/21

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

SUFFOLK COUNTY SUPERIOR COURT
CIVIL ACTION NO.

| | |
|---|---|
| JAMAINE GAITOR | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF BOSTON – SOAR BOSTON | ) |
| LEEROY PEEPLES, | ) |
| TALIA WRIGHT-RIVERA,  and | ) |
| WASCAR CASTILLO | ) |
| Defendants | ) |
| | ) |

E-FILED 10/15/2021

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

### **Parties, Jurisdiction and Venue**

1. Plaintiff, Jamaine Gaitor ("Plaintiff) is an individual residing at 259 Prospect Hill Street, Raynham MA 02767. He is 44 years old, and born on 7/14/77, and Black.

2. Defendant City of Boston – SOAR Boston ("SOAR"), which stands for Street Outreach Advocacy and Response. SOAR is the City's gang intervention program, located at 1483 Tremont Street, Dorchester, MA 02118.

3. Defendant Leeroy Peeples (hereinafter "Defendant Peeples") is an individual residing at 5 Linden Park Drive, Randolph, MA 02368, and upon information and belief at all relevant times was the Strategy and Operations Manager at SOAR with managerial authority over all of SOAR's employees.

4. Defendant Talia Wright-Rivera (hereinafter "Defendant Wright-Rivera") is an individual residing at 24 Rosewood Street, Mattapan, MA, 02126, and upon information and belief

at all relevant times was the Director of SOAR with managerial authority over all of its employees.

5. Defendant Wascar Castillo (hereinafter "Defendant Castillo") (collectively "Defendants") is an individual with a business address of 1483 Tremont Street, Dorchester MA 02118 and upon information and belief at all relevant times was the Director of Human Resources of SOAR.

6. The Court has jurisdiction over this case pursuant to M.G.L. c. 233A § 2 and M.G.L. c. 212 § 4, and venue is appropriate because most or all of the parties reside in or have a business address in Suffolk County.

**Facts**

7. Plaintiff reasserts the facts set forth in paragraphs 1-6.

8. SOAR is a gang intervention program funded and managed by the City of Boston.

9. At all relevant times, The SOAR program employed approximately 33 individuals, of whom approximately 31 are people of color. Black employees were largely Streetworkers and Streetworker Supervisors, while Hispanics were largely in management rolls.

10. In September 2006, Plaintiff was hired by the City of Boston as Streetworker in gang intervention and prevention. In approximately 2019 the program was renamed as the SOAR Boston program and he was then streetworker for the City doing the same job as he had peviously.

11. From 2008 to his termination, Plaintiff was a Union Steward in the SOAR office for SEIU Local 888, which was the Union to which most SOAR employees belonged.

12. Prior to Defendant Wright-Rivera becoming the Director of the Program, the atmosphere in the program was collegial and like a family.

2

13. Defendant Wright Rivera was a Streetworker in 2006 for the City's gang intervention program; she left at some point thereafter and was rehired as the Director of the SOAR program in July 2019.

14. When Defendant Wright Rivera became the Director, she began to bully and harass older workers and workers who were Union stewards, including Plaintiff.

15. Defendant Wright Rivera would say at roll call in the afternoon, in front of the entire SOAR staff, that anyone over 40 was too old and should find a new job.

16. After stating this one time at roll call, Wright Rivera turned to Plaintiff and asked why he was still there.

17. From July 2019 to June 2020, Defendant Wright Rivera would often target certain older individuals for discipline and ultimately termination, including workers Robert Miller, Jackie Perry and Robyn Christian, all over the age of 50. All of these workers were also dark-skinnned Black.

18. Plaintiff complained to Wright Rivera and Peeples about the harassment of older workers at SOAR. Nothing changed.

19. From about July 2019 to March 2020, Defendants Wright Rivera and Leeroy Peeples would harass and make fun of Senior Streetworker, Robert Miller, a Black employee, because he had several disabilities resulting from his ongoing stage-4 cancer treatment, including incontinence. For instance, Defendants Peeples and Wright-Rivera would not allow Miller to ride the van, even while other, non-disabled workers could. He had to walk. They refused to accommodate his disability and made fun of his incontinence.

20. Wright-Rivera and Peeples harassed Robert Miller, who had a disability and stage four cancer. They refused to accommodate his disability. Miller had to wear Depends as a

3

result of his disability and they made fun of him, both in front of him and behind his back for it.

21. On one occasion that the managers let Miller drive the van, Miller had to pull over to relieve himself. When Peeples found out about this, he told Plaintiff "we got him." Plaintiff refused to participate in this. Miller died within a month of that incident.

22. Plaintiff complained to Wright Rivera and Peeples about the way they treated Miller.

23. Defendant Peeples repeatedly told Plaintiff in or around 2019 that "we need to get Miller out of here, that is a supervisory position that someone else could move into." Plaintiff refused to go along with Peeples' scheme to do so.

24. Throughout 2019, coworker Jackie Perry, also Black, and in her 60's, was harassed by Wright Rivera for her age and disability. She had had recent back surgery, and was moving more slowly. Defendant Peeples called Ms. Perry "dead weight" and "too slow."

25. As a result of this bullying, Jackie Perry transferred to a position at the Boston Public Library.

26. Jackie Perry also drafted a grievance as a result of this behavior, claiming age and disability discrimination. She gave it to Plaintiff as Union Steward to submit to the Union.

27. Robyn Christian, also a Black woman and senior streetworker supervisor, was targeted by Peeples. He said Christian was too old and had been there too long. She is 53. She had been there since program started.

28. Plaintiff suffers from Anxiety, Depression, Post Traumatic Stress Disorder (PTSD) and claustrophobia as a result of his active duty in the military during the Iraqi war.

4

29. On or about January 2020, Talia Wright-Rivera, Director of SOAR, made it mandatory for the streetworkers to drive around the city in crowded vans. In the many years that the program existed, this has never been a requirement. Workers had always been allowed to take their own car and meet the team at a given location.

30. Plaintiff asked if he could use his car instead, as an accommodation to his disability. Talia Wright-Rivera told Plaintiff that he was required to get into the crowded van anyway.

31. After Plaintiff complied and got into the crowded van that day, he had a panic attack in front of Wright Rivera and his colleagues.

32. At about this same time, January or February 2020, Plaintiff provided a doctor's note to his employer, which again stated that he had disability and need for accommodation.

33. Without engaging in any meaningful dialog about his disability or its accommodation, the following week Defendant Wright-Rivera told Plaintiff again that he had to get into the crowded van along with the others, despite witnessing his panic attack previously and receiving a doctor's note regarding his disability and request for an accommodation.

34. Between his claustrophobia and concerns about the lack of protocols around Covid-19, Plaintff took a personal day to avoid getting in the van with other employees. He was disciplined for doing so.

35. Another Streetworker, Stephen "Donnie" Powell, also objected to getting on the crowded van, citing his disabilities. He was told to get on anyway too.

36. When Powell was to meet with Wright-Rivera and Wascar Castillo, Director of Human Resources, about an accommodation, Mr. Powell asked Plaintiff, as his union steward, to accompany him, fearing it would be a disciplinary procedure. Rivera and Castillo made

Plaintiff leave, asserting that if he stayed, it would then turn into a disciplinary meeting for Mr. Powell.

37. In July of 2020, Plaintiff applied for and received a promotion to Resource Coordinator. With that promotion also came a four-month probationary period. He reported to Davo Jefferson, also a Black Streetworker Supervisor, who only gave him positive feedback and raised no performance issues with him.

38. On or about October 8, 2020, in a regular daily roll call meeting of about 30 people, the group raised a complaint with Wright-Rivera for not following Covid-19 protocols, specifically that employees had no Personal Protective Equipment (PPE), no plastic shields for cubicles or desks, no one coming through every two hours to wipe down common areas, no hot water in the building, and no one screening individuals for Covid-19 symptoms when they came into the building.

39. In response, Wright-Rivera gave all employees five throw-away masks and told them to keep recycling them.

40. Wright-Rivera still required employees to get into the van together. She told them that if they had a problem then they should use FMLA or to "do what they have to do." This, despite disciplining Plaintiff for taking a personal day instead of getting on the van.

41. After this, many coworkers complained to Plaintiff as the Union Representative. A letter was written as well, which Plaintiff sent out, to the Boston Public Health Commission, Mayor Marty Walsh, Marty Martinez, the Chief of Human Services, a few Boston City Council members and others, complaining of the lack of Covid-19 protocols in place. Plaintiff did this anonymously, knowing that he would be retaliated against by Defendants if they found out that he had sent it, and he would likely be terminated.

6

42. Plaintiff filed numerous grievances on his own behalf and on behalf of coworkers as a result of Defendant's inaction relative to Covid-19 protocols, and for their treatment of older or disabled workers, or for retaliation against Union Stewards.

43. When employees would attempt to speak at the office, including just a few people in the kitchen, Defendants Peeples and Wright-Rivera would immediately break it up, fearing that they were discussing Union matters. This was especially true if they saw someone talking specifically to Plaintiff or Tariq Jamison, another Union Steward. Defendants would say that the door needed to be kept open. Peeples once remarked walking way that he would like to "throw a bomb in there and blow [it] up."

44. On occasion when Wright Rivera would come in and break up a discussion, she would tell them,"the union can't help you now."

45. In late October Defendants discovered that Plaintiff had sent this letter to the BPHC and others regarding the lack of Covid-19 protocols in place at SOAR.

46. On November 2, 2020, while Plaintiff was on vacation, Defendant Wascar Castillo, Director of Human Resources, called him and stated that he heard that Plaintiff had complained of a hostile work environment. Plaintiff told him that he never complained about the hostile work environment, despite there being one.

47. Plaintiff then requested that he please record the current meeting. Defendant Castillo told Plaintiff that everything they discussed would be confidential. Plaintiff told him that Wright-Rivera and Peeples have a history of retaliation and he did not want the contents of their discussion divulged to them. Plaintiff told Castillo that he knew they were trying to fire him. He told Castillo that he heard everything out of Talia's office, including that Talia "wanted [him] gone."

7

48. Plaintiff's office was close enough to Wright Rivera's that he heard her ask a member of Labor Relations how she could extend certain people's probation. Just asking questions at roll call would result in discipline and an extension of probation.

49. Contrary to their agreement. Defendant Castillo spoke to Wright-Rivera and Peeples about the confidential conversation, despite knowing that they would retaliate against Plaintiff.

50. On November 3, 2020, while on his vacation, a constable came and dropped off a letter to Plaintiff signed by Wright-Rivera and Castillo. The letter stated that Plaintiff was terminated because he failed to meet expectations as a Resource Coordinator while on promotional probation. It also stated that Plaintiff made false statements but did not specify what those were. He had never received a wanting for his performance as Resource Coordinator.

51. On November 4, 2020 his probationary period was to have ended.

52. Per the City's own policy, Plaintiff was supposed to be returned to his old position if he didn't ultimately retain the Coordinator role during the probationary period. This did not occur.

53. Plaintiff was making approximately $62,500.00 annually as Resource Coordinator for the SOAR program.

54. Plaintiff was out of work and seeking a job from November 2020 to May 2021, when he obtained a position with the state as Veteran's Representative, making $47,500.00 per year.

55. Plaintiff was fired without any progressive discipline or with the Defendants fully asserting the reasons for it , in violation of Defendants' own policies and procedures.

8

56. Plaintiff and his Black coworkers were disciplined for infractions for which neither White employees nor Hispanic employees would have been disciplined.

57. Plaintiff has satisfied all prerequisites to bringing this action.

## COUNT I
### Discrimination based on Plaintiff's race and color in violation of M.G.L. c.151B section 4(1)
*All Defendants*

58. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

59. Defendants' actions constitute discrimination based on Plaintiff's race and color, in violation of M.G.L. c.151B sec.4(1).

60. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

61. Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT II

### Discrimination based on Plaintiff's race and color in violation of Title VII, 42 U.S.C. section 2000e-2(a)(1).
*All Defendants*

62. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

63. Defendants' actions constitute discrimination based on Plaintiff's race and color, in violation of 42 U.S.C. section 2000e-2(a)(1).

64. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

65. Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT III

9

**Discrimination based on Plaintiff's age in violation of 29 U.S.C. section 621 et seq.**
*All Defendants*

66. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

67. Defendants' actions constitute discrimination based on Plaintiff's age, in violation of 42 U.S.C. section 2000e-2(a)(1).

68. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, attorneys' fees and costs, compensatory damages and emotional distress.

69. Defendants are liable for Plaintiff's lost wages, front and back pay, compensatory damages and punitive damages so proven at trial.

## COUNT IV

**Discrimination based on Plaintiff's age,
in violation of M.G.L. c.151B, section 4 (1B)**
*All Defendants*

70. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

71. Defendants' actions constitute discrimination based on Plaintiff's age, in violation of M.G.L. c.151B, sec.4 (1B).

72. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

73. Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT V

**Failure to accommodate plaintiff's disability,
in violation of M.G.L. c. 151B sec. 4 (16)**
*All Defendants*

74. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

75. Defendants' actions constitute a failure to accommodate his disability, in violation of M.G.L. c.151B, sec.4 (16).

10

76. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

77. Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT VI

### Failure to accommodate plaintiff's disability in violation of 42 U.S.C. sec. 12111
*All Defendants*

78. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

79. Defendants' actions constitute a failure to accommodate his disability, in violation of 42 U.S.C. sec. 12111.

80. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

81. Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT VII

### Retaliation in violation of M.G.L. c.151B sec. 4(4)
*All Defendants*

82. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

83. Defendants' actions constitute retaliation, in violation of M.G.L. c.151B sec. 4(4).

84. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, attorneys' fees and costs, compensatory damages and emotional distress.

85. Defendants are liable for Plaintiff's lost wages, front and back pay, compensatory damages and punitive damages so proven at trial.

## COUNT VIII

### Retaliation in violation of 42 U.S.C. 2000e-3(a)
*All Defendants*

11

86. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

87. Defendants' actions constitute retaliation, in violation of 42 U.S.C. 2000-e3(a).

88. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, attorneys' fees and costs, compensatory damages and emotional distress.

89. Defendants are liable for Plaintiff's lost wages, front and back pay, compensatory damages and punitive damages so proven at trial.

## COUNT IX
### Unlawful aiding and abetting of discriminatory actions
### in violation of M.G.L. c.151B sec. 4(5)
*All Defendants*

90. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

91. Defendants' actions constitute aiding and abetting in discriminatory acts, in violation of M.G.L.c.151B sec. 4(5).

92. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

93. Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT X
### Unlawful interference with Plaintiff's rights under the anti-discrimination statute in
### violation of M.G.L. 151B, sec. 4(4A)
*All Defendants*

94. The Plaintiff restates the foregoing paragraphs and incorporates them herein.

95. Defendants' actions constitute unlawful interference with the Plaintiff's enjoyment of his employment rights, in violation of M.G.L.c.151B sec. 4(4A).

96. As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

12

97. Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT XI
### Retaliation in Violation of the Massachusetts Whistleblower Act, M.G.L. c.149, sec. 185 (b)(1)
*Defendant City of Boston*

*98.* The Plaintiff restates the foregoing paragraphs and incorporates them herein.

99. Defendants' actions constitute retaliation for disclosing a violation of the Covid-19 mandate, which was a risk to public health and safety, in violation of M.G.L. c.149, sec. 185(b)(1).

100.    As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

101.    Defendants are liable for three times the amount of Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT XII
### Retaliation in Violation of the Massachusetts Whistleblower Act, M.G.L. c.149, sec. 185 (b) (3)
*Defendant City of Boston*

*102.*    The Plaintiff restates the foregoing paragraphs and incorporates them herein.

103.    Defendants' actions constitute retaliation for Plaintiff's refusal to participate in actions which violate the law or which put public health or safety at risk, in violation of M.G.L. c.149, sec. 185(b)(3).

104.    As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

13

105.     Defendants are liable for three times the amount of Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT XIII
### Discrimination based on race color, in violation of the Massachusetts Equal Right Act, M.G.L. c.93, sec. 102

*106.*     The Plaintiff restates the foregoing paragraphs and incorporates them herein.

107.     Defendants' actions constitute a violation of Plaintiff's Civil Rights and Equal Protections, in violation of M.G.L. c.93, sec. 102.

108.     As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

109.     Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT XIV
### Discrimination based on age and disability in violation of the Massachusetts Equal Right Act, M.G.L. c.93, sec. 103
*All Defendants*

110.     The Plaintiff restates the foregoing paragraphs and incorporates them herein.

111.     Defendants' actions constitute a violation of Plaintiff's Civil Rights and Equal Protections, in violation of M.G.L. c.93, sec. 103.

112.     As a result of Defendants' actions, Plaintiff has suffered lost wages, both front and back pay, compensatory damages and emotional distress.

113.     Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees and costs, compensatory damages and punitive damages so proven at trial.

## COUNT XV
### Violation of Massachusetts Civil Rights Act, c.12, sec 11I
*All Defendants*

14

114.     The Plaintiff restates the foregoing paragraphs and incorporates them herein.

115.     Defendants' actions constitute a violation of Plaintiff's Civil Rights and Equal

Protections, in violation of M.G.L. c.93, sec. 103.

116.     As a result of Defendants' actions, Plaintiff has suffered lost wages, both front

and back pay, compensatory damages and emotional distress.

117.     Defendants are liable for Plaintiff's lost wages, front and back pay, attorneys' fees

and costs, compensatory damages and punitive damages so proven at trial.

## COUNT XVI
### Intentional Infliction of Emotional Distress
*All Defendants*

118.     The Plaintiff restates the foregoing paragraphs and incorporates them herein.

119.     Defendants' actions constitute intentional infliction of emotional distress.

120.     Defendants are liable for Plaintiff's lost wages, front and back pay, compensatory

damages and punitive damages so proven at trial.

## COUNT XVII
### Breach of Implied Covenant of Good Faith and Fair Dealing
*All Defendants*

121.     The Plaintiff restates the foregoing paragraphs and incorporates them herein.

122.     Defendants' actions constitute a breach of the Implied Covenant of Good Faith

and Fair Dealing.

123.     As a result of Defendants' actions, Plaintiff has suffered lost wages, both front

and back pay, compensatory damages and emotional distress.

124.     Defendants are liable for Plaintiff's lost wages, front and back pay, compensatory

damages and punitive damages so proven at trial.

15

WHEREFORE, the Plaintiff requests that the Court:

a.  Award the full amount of his damages incurred as a result of Defendants' discriminatory actions, including without limit lost back and front pay, punitive damages, reasonable attorneys' fees and costs incurred;

b.  Award the Plaintiff such other and further relief as the Court deems appropriate.

**PLAINTIFF CLAIMS A JURY TRIAL AS TO ALL ISSUES SO TRIABLE.**

Respectfully submitted,

Jamaine Gaitor
By his attorney,

*/s/ Janet Ruggieri*
Janet Ruggieri, BBO#634431
Murphy & Rudolf, LLP
Worcester, MA 01608
Telephone: (508) 425-6330
Fax: (508) 536-0834
ruggieri@murphyrudolf.com

Dated: 10/15/21

16

**2**

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

COUNTY SUFFOLK

| Plaintiff:  Jamaine Gailor | Defendant: City of Boston – SOAR Boston; Leeroy Peeples; Talia Wright-Rivera, and Wascar Castillo |
|---|---|
| ADDRESS:  259 Prospect Hill Street, Raynham, MA 02767 | ADDRESS: 1483 Tremont Street, Dorchester, MA 02118 |
| | E-FILED 10/15/2021 |
| Plaintiff Attorney: Janet Ruggieri | Defendant Attorney: |
| ADDRESS: Murphy & Rudolf, LLP | ADDRESS: |
| 1 Mercantile Street, Suite 740, Worcester MA 01608 | |
| BBO: 634431 | BBO: |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ☒ YES    ☐ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?   ☐ YES   ☒ NO       Is there a class action under Mass. R. Civ. P. 23?   ☐ YES   ☒ NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**

A. Documented medical expenses to date

   1. Total hospital expenses _____

   2. Total doctor expenses _____

   3. Total chiropractic expenses _____

   4. Total physical therapy expenses _____

   5. Total other expenses (describe below)   $100,000+

   | Fraudulent Conveyance |

                          Subtotal (1-5):   **$100,000+**

B. Documented lost wages and compensation to date _____

C. Documented property damages to date _____

D. Reasonably anticipated future medical and hospital expenses _____

E. Reasonably anticipated lost wages _____

F. Other documented items of damages (describe below)

                           TOTAL (A-F):   **$100,000+**

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

| Signature of Attorney/Unrepresented Plaintiff: X  /s/ Janet Ruggieri | Date: 10/15/2021 |
|---|---|

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney/Unrepresented Plaintiff: X  /s/ Janet Ruggieri | Date: 10/15/2021 |
|---|---|

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT DEPARTMENT
SUPERIOR COURT

SUFFOLK, SS                                         CIVIL ACTION NO:

---

JAMAINE GAITOR                    )
                                  )
        Plaintiff                 )
                                  )
v.                                )
                                  )
CITY OF BOSTON-SOAR BOSTON,       )
LEEROY PEEPLES,                   )
TALIA WRIGHT-RIVERA, AND          )
WASCAR CASTILLO                   )
                                  )
        Defendants                )
                                  )

---

## NOTICE OF APPEARANCE OF COUNSEL, JANET R. RUGGIERI FOR PLAINTIFF, JAMAINE GAITOR

The undersigned counsel hereby gives notice of his appearance in this matter on behalf of

Plaintiff, Jamaine Gaitor. Please forward all correspondence to this office.

Respectfully submitted,
Plaintiff, Jamaine Gaitor,
By his Attorney,


*s/Janet R. Ruggieri/*
Janet R. Ruggieri BBO# 634431
MURPHY & RUDOLF, LLP
One Mercantile St., Suite 740
Worcester, MA 01608
p. (508) 425-6330
f. (508) 536-0834
ruggieri@murphyrudolf.com


Dated: 10/15/21

Certificate of Service

I, Janet R. Ruggieri, swear and affirm that I have this day served a copy of my notice of appearance upon Defendants' counsel, Kristofer S. Wilson, Esq., Counsel for the City of Boston, at City Hall, Room 624, Boston MA 02201 by email and first-class mail.

Dated: 10 15 21


*s/Janet R. Ruggieri/*
Janet R. Ruggieri

| TRIAL COURT OF MASSACHUSETTS | NOTICE OF APPEARANCE | |
|---|---|---|

| COURT DEPARTMENT | DIVISION OR COUNTY | |
|---|---|---|
| SUPERIOR | SUFFOLK | COURT USE ONLY |

| CASE NAME | DOCKET NUMBER |
|---|---|
| *[In Matter of]* <br><br> Jamaine Gaitor <br> *[v.]* <br><br> City of Boston – SOAR, et al | 2184CV02362 |

## TO THE CLERK- MAGISTRATE / RECORDER / REGISTER:

Please enter my appearance in the above-named matter

☐ for myself.

◉ as attorney for   Jamaine Gaitor

(Name(s))

| NAME (FIRST, MIDDLE, LAST) | B.B.O. NUMBER (IF APPLICABLE) |
|---|---|
| Benjamin C. Rudolf | 667695 |

| FIRM OR AGENCY NAME (IF APPLICABLE) | OFFICE OR HOME PHONE NUMBER |
|---|---|
| Murphy & Rudolf, LLP | (508) 425-6330 |

| STREET ADDRESS | APT/UNIT # | MOBILE PHONE NUMBER |
|---|---|---|
| 1 Mercantile Street, Suite 740 | | FAX NUMBER |

| CITY/TOWN | STATE | ZIP CODE | E-MAIL ADDRESS |
|---|---|---|---|
| Worcester | MA | 01608 | brudolf@murphyrudolf.com |

| DATED | SIGNATURE |
|---|---|
| 11/18/2021 | **X** */s/ Benjamin C. Rudolf* |

11/9

NOTIFY

11/09 ✓

3

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

SUFFOLK COUNTY SUPERIOR COURT
CIVIL ACTION NO. 2184CV02362   B

JAMAINE GAITOR )
)
        Plaintiff )                                11/4/2021 e-filed KG
)
v. )
)
)
CITY OF BOSTON – SOAR BOSTON )
LEEROY PEEPLES, )
TALIA WRIGHT-RIVERA,  and )
WASCAR CASTILLO )
        Defendants )

## MOTION TO APPOINT SPECIAL PROCESS SERVER UNDER RULE 4C OF THE MASSACHUSETTS RULES OF CIVIL PROCEDURE

The Plaintiff moves this Honorable Court to appoint FRANCIS J. TRAPASSO

AND/OR HIS/HER AGENTS, a Constable/Process Server and a qualified and knowledgeable

person in the service of court process and not a party to the action, a disinterested person who is

over 18 to be specially appointed by the court to serve the process in this action under the

provision of Rule 4C of the Massachusetts Rules of the civil procedure in order to assure a

substantial savings in time.

notice sent
11.16.21
JRR.
m+R.up
mo

Attst: Clmatio on %dayg
Assistant Clerk

8 November 2021, ALLOWED, Leighton, J.

Respectfully Submitted,
Plaintiff Jamaine Gaitor,
By his attorney,


/s/ Janet Ruggieri
Janet Ruggieri, Esq.
BBO# 634431
Murphy & Rudolf, LLP
1 Mercantile Street, Suite 740
Worcester, MA 01608
T: (508) 425 – 6330
F: (508) 536 – 0834
ruggieri@murphyrudolf.com

Dated: November 4, 2021

2